Coös,
Oct. 5, 1926.

### David McConnell v. Joseph Lamontagne.

A parent is not liable to third parties for necessaries furnished his minor child in the absence of an express or implied contract.

The understanding of one of the parties alone as to the existence of a contract is usually immaterial. But evidence tending to show a concurrence in the actual understanding or mental assent of both parties is material.

The understanding of each of the parties may be proven separately, either by direct testimony or by the proof of circumstances from which it is a logical inference.

On the question whether a father was under obligation to pay for medical treatment given his minor son in a hospital, proof that he attempted to secure his removal to a free hospital, and his own testimony that if he had had the money he would have paid the physician's bill when rendered, are competent evidence of his understanding that he was under legal obligation to pay for the treatment. The plaintiff's concurrent understanding is sufficiently proved by his own direct testimony to that effect.

Assumpsit, to recover for medical services rendered by the plaintiff to the defendant's minor son. Trial by jury and verdict for the plaintiff. Motions for a nonsuit and for a directed verdict, seasonably made, were denied, subject to the defendant's exceptions. After the verdict the defendant moved to set it aside as contrary to law, and renewed his motion for a directed verdict. Both motions were granted subject to the plaintiff's exceptions. Transferred by *Burque*, J. The facts appear in the opinion.

*Matthew J. Ryan*, for the plaintiff.

*Robert Rich*, for the defendant.

SNOW, J. By the common law as adopted in this jurisdiction there is no legal liability of a parent to third parties for necessaries furnished a minor child in the absence of an express or implied contract. This principle is established and reaffirmed in well-considered cases. *Kelley* v. *Davis*, 49 N. H. 187, 190; *Hammond* v. *Corbett*, 50 N. H. 501, 505; *Burns* v. *Madigan*, 60 N. H. 197. Our statute law at the date of the services for which recovery is sought provided only for the indemnity of the public against the maintenance of paupers, and not for the reimbursement of an individual who may have relieved the necessities of the minor. P. S., c. 84, s. 12; *Kelley* v. *Davis, supra.* There being no such legal liability and no express agreement, the defendant's liability, if any, must rest upon evidence of the conduct of the parties from which a mutual understanding may be inferred. *Page* v. *Snell*, 59 N. H. 531.

The son was but seventeen years of age and was occupying a room with the defendant at a boarding house to which they had removed upon the breaking up of their former home. For some considerable time prior to the plaintiff's services the boy had been unable to work. During the temporary absence of the father the boy was taken very ill, and on the suggestion of his landlady he was taken by the plaintiff to the hospital for emergency treatment, and there remained under his care for one hundred days. The father, upon his return from work the night of the boy's removal to the hospital, and thereafter on Sundays and as often as convenient during each week, visited the boy at the hospital. He wanted to transfer the boy to a "hospital for the poor," but the boy would not consent. The plaintiff continued his treatment, to which the father offered no further objection. Following one of his visits to the hospital, upon the suggestion of the "sisters" in charge, the defendant accompanied another son to the plaintiff's office to request a change in treatment, which request was granted and acted upon. Although he could not speak English, he understood the purpose of his call. The defendant's only objections to paying the plaintiff's bill, which was presented after the treatment, were that he did not make the arrangement to have the son taken to the hospital, that the bill was large, and that he could not afford to pay. He testified that if he had had the money he would have paid

the bill. The plaintiff testified that he supposed the father would pay.

In ascertaining the understanding of the parties, their situation, including the relationship of father and son and the moral obligations and natural impulses incident to that relationship, is material and important; not as evidence, in and of itself, of a legal obligation or of an implied contract, but to assist in interpreting the words and conduct of the parties.

Had the defendant been present and accompanied his minor son to the hospital when the situation arose which necessitated the boy's removal and the plaintiff's services, and had he then given the plaintiff directions as to the treatment of the boy, there could be question neither as to the competency, nor as to the persuasive character, of the evidence of the defendant's conduct to support an implied promise to pay the plaintiff for such services. The fact of the father's absence when the emergency requiring treatment arose is not controlling. The defendant's subsequent direction to the plaintiff to change his treatment tended to prove the defendant's acceptance of, and promise to pay for, the services which the defendant was under a moral obligation to supply. A jury could find that the defendant, under such circumstances, understood that a reasonable person in the position of the plaintiff, having a like realization of the defendant's relationship and natural obligation, would be induced to continue the treatment of the son upon the expectation that the defendant intended to pay therefor. Such treatment being continuous from its inception, the defendant's acceptance of the plaintiff's services had the force of a prior request.

By the modern law of contract, the mere state of mind of the parties — with reference to the "meeting of minds" — is not the essential object of inquiry, the terms of the promise-act being determinable by an external and not by an internal standard (3 Wig. Ev. 1971; *Woburn Bank* v. *Woods*, 77 N. H. 172, 174; *Fitch* v. *Ins. Co.*, ante, 318), or by what distinguished writers have termed the objective rather than the subjective test. 1 Williston, Contracts, 20–22a; 14 Ill. Law Rev. 525; 6 St. Louis Law Rev. 41; 33 Harv. Law Rev. 376. The particular and non-concurring understanding of one of the parties is therefore usually immaterial. However, evidence tending to show a concurrence in the actual understanding or mental assent of the parties is material, and where such concurrence is established, it is controlling. 3 Wig. Ev. 1971; *Delano* v. *Goodwin*, 48 N. H. 203, 206; *Ross* v. *Knox*, 71 N. H. 249, 250;

*Woburn Bank* v. *Woods, supra.* Where the mental attitude of the parties is thus material the understanding of each may be proven separately. *Delano* v. *Goodwin, supra; Cook* v. *Bennett,* 51 N. H. 85, 93. Such understanding may be shown either directly by the testimony of the party or by the proof of circumstances from which it is a logical inference. *Elliot Hospital* v. *Turcotte,* 79 N. H. 110, 111; *Gale* v. *Insurance Co.,* 41 N. H. 170, 174; *Hale* v. *Taylor,* 45 N. H. 405, 406; *Moore* v. *Davis,* 49 N. H. 45, 56; *Cook* v. *Bennett, supra.* The direct testimony of the plaintiff that he supposed the father would pay was competent evidence of the plaintiff's understanding. That the defendant had a like understanding might be inferred (1) from proof of his attempt to secure the consent of the son to be transferred to a hospital where presumably there would be no expense of treatment, notwithstanding such attempt did not come to the plaintiff's attention, and (2) from the defendant's direct testimony that, if he had had the money, he should have paid the plaintiff's bill when rendered. It therefore could be found that the actual understandings of the parties concurred in support of the inference to be drawn from their overt acts, that the parties mutually expected that the defendant would pay for the plaintiff's services.

As, on the law and the evidence, an implied promise by the defendant could be found, there must be

*Judgment for the plaintiff.*

MARBLE, J., did not sit: the others concurred.