251 P.2d 392]

[Civ. No. 15321.   First Dist., Div. One.   Dec. 22, 1952.]

LENORE WOOLAMS, Respondent, v. LEONARD A. WOOLAMS, Appellant.

(1)

Phillip Barnett for Appellant.

Freitas, Freitas & Allen for Respondent.

BRAY, J.—Plaintiff, a polio victim 36 years of age, in an action brought under section 206, Civil Code, recovered judgment against defendant, her father, for $250 per month support. Defendant appeals.

### QUESTION PRESENTED
Did the trial court abuse its discretion?

### FACTS
Defendant at the time of trial in 1950 was 63 years old. Prior to 1941 when plaintiff's mother divorced him, all three lived in affluence, defendant having an income of around $100,000 per year. October 7, 1939, plaintiff was stricken with poliomyelitis, and for approximately three years was confined to her bed. She is still crippled from the waist down, has to be lifted as she is unable to walk, and requires constant care and attention, medical and therapeutic treatment. She has no financial resources. Prior to the divorce defendant provided nurses and spent over $12,000 in medical and nursing care. In the divorce decree the mother was awarded $300 per month alimony, which according to their

property settlement agreement included support and maintenance of plaintiff. This alimony is the mother's only financial resource. In 1942 plaintiff broke her hip. Defendant paid a $500 doctor's bill thereby incurred. Thereafter until 1944 plaintiff was supported entirely by her mother out of this alimony. In December, 1944, apparently due to the urging of plaintiff's attorney, defendant started paying plaintiff $75 per month. Later, her attorney succeeded in getting this support raised to $100 per month. Approximately two years before the trial defendant gave plaintiff or her mother $1,400 to pay back bills incurred by the mother. Defendant required plaintiff to execute a note to him in that amount. He testified that it was for income tax purposes.

Since 1941 plaintiff and her mother have been diligently and bravely seeking a restoration of plaintiff's ability to walk. They have moved from place to place in an attempt to better her condition or to provide quarters more suitable to her condition. On one occasion they went to Sister Kenny's hospital in Minneapolis for four months' treatment. To finance the trip, the mother sold her furniture, jewelry and piano. Defendant was not asked to assist. The mother is getting older, and has had eight years of 24-hour duty taking care of plaintiff. Plaintiff should have a 24-hour nurse which would cost $150 per month. Plaintiff's doctor testified that plaintiff needs a great deal of physiotherapy, massage and reeducation of her muscles. She requires a special diet as she is overweight. Plaintiff testified that she takes lessons in ceramics as she hopes to teach the subject one day. She also stated that physical activities such as use of a sewing machine by her feet, a piano by her hands, swimming and exercises with bars and rings would be helpful. The polio foundation has given her a wheel chair and other help including supplying her physiotherapy and massage. Plaintiff has a great desire to overcome her paralysis, marry and have children. She has ability as a sculptress and in time might become self-supporting if she could use her hands properly and had the equipment and material. The evidence supports the conclusion that her mother is devoting her entire time and resources to plaintiff's care and that plaintiff is exerting every effort towards her own rehabilitation. Defendant urges that both mother and daughter fail to realize his financial situation and theirs and are unwilling to reduce their standard of living and to live as other polio victims with limited income do. The evidence shows some

support for this statement. Thus, the daughter has planned an ideal house for a polio victim to be built on a portion of the father's property and which would be highly expensive to build. She pointed out how much help she could get from a hydromatic car which she could learn to drive, a sewing machine, a piano, a gymnasium and a small swimming pool. However, even an impecunious polio victim may point out what things would be helpful to her in her earnest desire to be normal again. "While to the well child, food, clothing, and education, according to the parent's circumstances, are sufficient, if the child be either a temporary or permanent invalid additional care may be required." (*Simoneau* v. *Pacific Electric Ry. Co.*, 159 Cal. 494, 506 [115 P. 320].) Whether those things are attainable is a different question, dependent upon the earning ability and resources of her father. Any polio victim can, and plaintiff did, show a need far in excess of the amount allowed. But the coat must be cut to fit the cloth. This brings us to the vital question in the case—

## DEFENDANT'S FINANCIAL SITUATION

Defendant is now paying plaintiff and her mother $400 per month. He also pays $576 per year ($48 per month) premium on life insurance of which the mother is the beneficiary. (Apparently there is a $9,195 loan against this policy.) He has been an accountant, but since 1930 has been a promoter, investigating business propositions for clients, bringing investors and people having money to invest together. He has no office or fixed income. The period between making deals is long. He testified his gross income in 1942 was $6,123.61, in 1943, $12,683.97, in 1944, $11,731.02, in 1945, $12,654.43, in 1946, $7,423.37, in 1947, $1,955.13, in 1948, $5,252.22, in 1949, $10,152.47. These figures are taken from his income tax reports. He claims his net income after paying support to plaintiff and her mother in 1947 was minus $4,554.20, in 1948, minus $215.65, and in 1949, plus $1,051.36. He computes the amounts paid to plaintiff and her mother in 1949 as totaling 60 per cent of his gross income, and in July, 1950, (at the time of trial) as 57 per cent. It appears that in determining *gross* income he first deducts income taxes. He claims he has unsecured liabilities of $9,683.67, consisting of a bank overdraft of $129.80, personal loans $4,000, and a tax liability of $5,453.87. This tax liability is contingent and questionable. His only assets are furniture worth $1,000 in storage

at $17.50 per month and unimproved real property in Marin County which he purchased in 1926 for $97,000, portions of which he has sold from time to time to liquidate his liabilities. Defendant claims he has tried but has been unable to sell this property. There is a loan against the property for $13,490.83. One Nipper, a realtor called by plaintiff, estimated the value of the property as $43,500, although he said "I would not say it has reasonable market value now." His value was based upon selling it parcel by parcel, assuming that each individual would take care of his own sewer extension. Defendant offered no testimony as to the value of this property. The court found its market value to be in excess of $20,000 over the lien. (On motion for new trial, defendant filed the affidavit of one Jones to the effect that "the net realizable return for the sale of said property would not exceed $4,000.00" over the lien.) Defendant claims that at the time of the divorce the community debts were $62,330, including expenses of plaintiff's illness, of which he has paid off $52,281; that he is supporting plaintiff to the extent of his ability. He resides at the Pacific Union Club in San Francisco and belongs to the Olympic Club. He contends these memberships are necessary because it is there he gets his business contacts. His living expenses are not high, costing him about $200 per month. He claims he has tried to get a job but doubts if a large firm of accountants would employ a man of his age. He "cannot handle the little stuff" and feels that his best opportunity lies in fairly good size promotions. At the time of trial he was not expecting any substantial fees and did not know where he would get the next $300 to pay plaintiff's mother. He has no fixed income. Some months he receives nothing. He has been fortunate in being able to borrow to keep him going until fees come in.

## DID THE COURT ABUSE ITS DISCRETION?

The court found that defendant "is an able-bodied man of considerable experience in the business world, is competent, intelligent and personable; that Defendant is capable of earning an income sufficient to enable himself to pay" the amount ordered for plaintiff's support. Here is a father 63 years of age, whose average yearly gross income over the previous eight calendar years was $8,500, whose gross income for the first six months of 1950 was $3,850, whose physical assets are furniture valued at $1,000 and equity in

real property worth at least $20,000 (we are required to accept this figure under the rule that we must consider the evidence most strongly in favor of the trial court's ruling), who has liabilities of $4,129.80 and a possible liability of an additional $5,453.87, and who still has earning capacity. Can this court say it was an abuse of discretion to require that father to pay $250 per month for plaintiff's support in view of the fact that he is also required to pay $300 to the mother? Although it is a hard case and one in which the trial court about reached the limit of defendant's ability to pay, we cannot say that there was an abuse of discretion. Defendant contends that a court cannot require him to dip into his physical assets to support his indigent sick child. He cites no cases in support of this contention, nor is it the law. See *Bailey* v. *Superior Court,* 215 Cal. 548 [11 P.2d 865], where the court intimated that a father might even be required to sell trucks he was using in his farming operations in order to support his children. ▆ When a father should be compelled to dip into his physical assets and for how much is primarily for the trial court to determine. It seems harsh that a man 63 years of age should be required to use up his life's earnings, if necessary to support his child, and thereby leave himself no cushion to fall back upon, for the years not too distant when he will have very little, if any, earning ability. Before that cushion should be reduced substantially, however, it would seem that the needs of the child must be pared down to a minimum. ▆ The purpose of section 206 seems to be to protect the public from the burden of supporting a person who has a parent able to support her. (See *Duffy* v. *Yordi,* 149 Cal. 140 [84 P. 838, 117 Am.St.Rep. 125, 9 Ann.Cas. 1017, 4 L.R.A.N.S. 1159].) Care must be taken, however, in applying this statute to see that the end result is not two persons for the people to support rather than one. The difficulty in this case is that we cannot say that the trial court felt there was any need for dipping substantially into defendant's assets. The evidence shows that defendant is engaged, as we said in *Cameron* v. *Cameron,* 85 Cal.App.2d 22, 29 [192 P.2d 89], in a business "whose success depends upon how much energy and effort he puts into" it. Defendant's business is of the type in which at any time he might receive fees far in excess of the $8,500 year's gross average. The trial court in its discretion made an award in view of defendant's earning ability. Whether subsequent events bring returns commensurate with that ability is another question

and one to be determined in a proper proceeding, if defendant fails to make the payments ordered. If such failure is justified by a lack of income and not by a deliberate refusal to use his talents, the court would then so find. ■ In determining support allowances a court is entitled to make them in view of a person's earning ability, even though it may later turn out that because of circumstances the person may not be able to realize the full value of that ability. As said in *Anderson* v. *Anderson*, 124 Cal. 48, 55 [56 P. 630, 57 P. 81, 71 Am.St.Rep. 17], where the court in a divorce action had made an allowance for support of an invalid adult child, "There is no settled rule which can be invoked in such a case to control the discretion of a trial court . . ." ■ It should be pointed out, too, that there is nothing final about this award. It may be changed at any time that circumstances require or justify a change. "If petitioner's circumstances have since changed so that the order places upon him an intolerable burden, he is not remediless. The trial court entering the decree still retains jurisdiction to modify its orders if circumstances warrant the ·change, and the proper procedure for a party who is unable to comply with an order for . . . the support of his minor children is to seek a modification of the order . . ." (*Bailey* v. *Superior Court, supra,* 215 Cal. 548, 555.) The same rule applies to support of an adult child. (See *Paxton* v. *Paxton,* 150 Cal. 667 [89 P. 1083].)

The facts in *Gilbert* v. *Gilbert,* 98 Cal.App.2d 444 [220 P.2d 573], cited by defendant, are not comparable to those in our case, although the rule of law discussed is. "Clearly the court refused to consider competent evidence and ignored the correct rule of law. His order should have been predicated upon the *ability of defendant to pay* as well as upon the necessity of the minor children." (P. 446.) Nor is *In re Lande,* 96 Cal. App.2d 926 [216 P.2d 909], in point. It was a contempt proceeding in which "petitioner was adjudged in contempt for failing to comply with an order which, according to the court below, 'he simply can't comply with.' " (P. 931.)

■ Defendant contends that because he was paying $100 per month for plaintiff's support, had in the past paid medical bills, and about two years before the trial gave plaintiff's mother $1,400 to pay past due bills, this action will not lie. He cites no cases to support the contention. There is no basis for it. Its absurdity is shown by an exaggerated example. Under it, a millionaire could not be required to

adequately support his invalid child if he were already paying a nominal sum for its support. Section 206 provides that it is the duty of the parent to support the child *to the extent of his ability*. The question in all cases under that section is not the amount the parent has been paying, but the extent of his ability to support the child.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.