[S. F. No. 19168.   In Bank.   Apr. 9, 1957.]

CHARLES P. BRATNOBER, Respondent, v. GERALDINE
R. BRATNOBER,  Appellant.

Livingston & Feldman, Isabella H. Grant and Lawrence Livingston for Appellant.

Mervyn Schneider and Anthony E. O'Brien for Respondent.

SPENCE, J.—Defendant wife appeals from an order modifying interlocutory and final judgments of divorce insofar as that order reduces the amount of alimony and child support payments. She contends that the evidence presented to the trial court did not constitute a legal basis for such modification, but the record does not sustain her position.

The parties married in December, 1940, and separated in 1949. Two children were the issue of the marriage. At the time of separation the parties divided their community property, the wife's share netting her some $11,400. The wife then moved, with the children, to Illinois to live with her parents. The husband in 1951 went through bankruptcy. In 1952 he sued for divorce, and the wife cross-complained. During the trial of the case, the parties and counsel conferred with the trial judge in chambers as to the terms of a possible settlement. It was then orally agreed that the husband would make monthly support payments of $250—$100 per month for the support of each of the two children and $50 per month for the support of the wife—and that such provisions could be incorporated in any divorce decree. The trial then proceeded and an interlocutory decree of divorce was awarded to the wife on February 26, 1953. She was given custody of the two minor children, and the husband was ordered to make the above specified support payments.

On March 2, 1954, shortly before time for entry of the final decree of divorce, the husband moved to modify the interlocutory decree by reducing the support payments. By stipulation of the parties, the motion was thereafter made applicable to the final decree, which was entered on March 26, 1954. After a hearing, the court granted the husband's

motion to modify on the "grounds of change in circumstances and [his] inability . . . to pay order." In its written order of modification the court found, in substance, that there had been a change in circumstances surrounding the husband's financial condition since the entry of the interlocutory decree in that the original provisions for support were based upon the husband's oral agreement at the time of the divorce trial to pay the specified sums, and that agreement was made the basis for the decree's provisions; that no evidence as to the husband's financial conditions, his earnings or earning capacity, nor of the needs of the wife and minor children was adduced at the divorce trial; that the husband made the agreement with the hope, expectation and understanding that his earnings and monthly income would be substantially increased following the entry of the interlocutory decree, either in the position in which he was then employed or in another position which he was expecting soon to take; that neither of these expectations was realized, and as a result he had not been able to make the payments required; that he was obliged to borrow money in order to make the payments up to and including February 26, 1954; and that he had no property or income of any kind, other than his earnings, which he might use to comply with the court's original support order. Accordingly, the court reduced the support payments for each child to $75 per month and the alimony payment for the wife to $1.00 per month.

The evidence indisputably shows that the husband's take-home pay at the time he agreed to the original payments was $338.62 per month, and that it remained the same thereafter, less $2.00 because of increased social security deductions; and that he was obliged to borrow $3,200 from his mother in order to make the support payments up to February 26, 1954.

Defendant wife contends that there was no showing of changed circumstances to justify the modification. ██ Since it "would be incongruous to allow an appealable order to become final and yet to concede the power of a court at a later date, upon the same state of facts, to issue an order nullifying it" (*Snyder* v. *Snyder*, 219 Cal. 80, 81 [25 P.2d 403] ), it is generally held that the "trial court is without authority to make an order reducing the amount of alimony [or support payments] awarded in an interlocutory [or final] decree of divorce in the absence of a showing that there has been a change in conditions subsequent to the entry of [such] decree." (*Ralphs* v. *Ralphs*, 86 Cal.App.2d 324, 325 [194 P.2d 592].)

■ However, upon a proper showing, "the court possesses power to modify [a support] order because of changed circumstances (Civ. Code, § 139)"; the justification for such "order depends on the facts and circumstances of each case"; and the "propriety of [the] modification rests largely in the discretion of the trial court." (*Moore* v. *Moore,* 133 Cal.App.2d 56, 58-59 [283 P.2d 338]; *Triest* v. *Triest,* 67 Cal.App.2d 320, 322 [154 P.2d 2].)

At the modification hearing, plaintiff husband testified that at the time of the divorce trial he had been working for a record firm about a year and a half; that he anticipated an increase in salary as of that time, and a further raise later; that he had also been negotiating with another company for a better position, with "substantially more" money; that neither of these expectations materialized and, in fact, his net monthly salary was $2.00 less because of additional social security deductions. Defendant wife argues that these expectations of plaintiff husband have no pertinency because it does not appear that they were communicated to her or the court at the divorce trial. She calls attention to the affidavit of the attorney who then represented her, stating that the original support payment "was not conditioned upon any increase in earnings." She relies on the rule pertaining to contracts that the undisclosed intentions of a party to a contract do not furnish a basis for its modification. (*Brant* v. *California Dairies, Inc.,* 4 Cal.2d 128, 133 [48 P.2d 13]; *Bell* v. *Minor,* 88 Cal.App.2d 879, 882 [199 P.2d 718].) ■ However, a support award does not have the finality of the ordinary contract as it is subject to re-examination by the court at any time. (Civ. Code, § 139; *Woolams* v. *Woolams,* 115 Cal.App. 2d 1, 7 [251 P.2d 392]; *Dunning* v. *Dunning,* 114 Cal.App.2d 110, 114 [249 P.2d 609].) Plaintiff husband maintains that the disclosure was made at the divorce trial as appears from his own testimony at the modification hearing, but that if there is any uncertainty or ambiguity in the record on that point, such disclosure could reasonably have been inferred by the court at the modification hearing as a circumstance justifying the reduction in the support payments. (*Kossine* v. *Styliano,* 40 Cal.App.2d 721, 724 [105 P.2d 952].) But the parties' conflicting views on this question of disclosure need not be resolved here, for the propriety of the modification order does not necessarily depend upon such disclosure.

■ In line with his motion for modification, plaintiff husband testified that his expectations as to future salary

increases constituted the basis for his agreement to make the support payments originally provided. These appear to have been reasonable expectations resting on reasonable prospects and since the original support order was based, in part at least, on his consent, the circumstances which motivated that consent were material to that order. An analogous situation is the case where the court may make an alimony award based not on the husband's actual earnings but on his ability to earn money, his future prospects. (*Webber* v. *Webber,* 33 Cal. 2d 153, 160 [199 P.2d 934] ; *McGann* v. *McGann,* 82 Cal.App. 2d 382, 388, 389 [186 P.2d 424] ; see also *Pencovic* v. *Pencovic,* 45 Cal.2d 97, 102 [287 P.2d 501].) Defendant relies on certain Alabama cases holding that any anticipated increase in income on the part of the husband at the time of the divorce decree, which may not have materialized, cannot be considered as a ground for reducing alimony payments. (*Aiken* v. *Aiken,* 221 Ala. 67 [127 So. 819, 820] ; *Colton* v. *Colton,* 252 Ala. 442 [41 So.2d 398, 399].) But in the light of the rule in this state that "a court is entitled to make [support allowances] in view of a person's earning ability" (*Woolams* v. *Woolams, supra,* 115 Cal.App.2d 1, 7) and his reasonable expectations are an essential consideration (*Pencovic* v. *Pencovic, supra,* 45 Cal.2d 97, 102), the contrary reasoning of the Alabama cases is not persuasive.

Whether the support order rests upon agreement of the parties (see *Adams* v. *Adams,* 29 Cal.2d 621, 624-625 [177 P.2d 265] ; *Hough* v. *Hough,* 26 Cal.2d 605, 612 [160 P.2d 15]) or is determined by the court upon evidence (*Becker* v. *Becker,* 64 Cal.App.2d 239, 242 [148 P.2d 381]), the question of reasonable expectations is material and a failure to realize them may constitute a change of circumstances justifying modification of the order. As further indication of the need for modification of his support obligations, plaintiff cites the sizable sum he borrowed from his mother to meet the payments originally scheduled. (*Shulman* v. *Shulman,* 125 Cal.App. 2d 120, 121-122 [269 P.2d 923].) ▆▆ Certainly, it cannot be disputed that "the trial court entering the decree still retains jurisdiction to modify its orders if circumstances warrant the change, and the proper procedure for a party who is unable to comply with an order for the payment of alimony or the support of his minor children is to seek a modification of the order—not to resist its enforcement, thereby subjecting himself to contempt proceedings." (*Bailey* v. *Superior Court,* 215 Cal. 548, 555 [11 P.2d 865] ; *Woolams* v. *Woolams,*

*supra,* 115 Cal.App.2d 1, 7.) ▮ Here upon the record disclosing the failure of plaintiff's reasonable expectations as a change of circumstances, there appears to be nothing inequitable in the amount of the reduced payments—$75 per month for each child and $1 per month alimony for defendant wife—and in the absence of a clear showing of the court's abuse of its discretion in making such modification, its order must be sustained. (*Leupe* v. *Leupe,* 21 Cal.2d 145, 151 [130 P.2d 697]; *Reed* v. *Reed,* 128 Cal.App.2d 786, 793-794 [276 P.2d 36].)

The order appealed from is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and McComb, J., concurred.

CARTER, J.—I dissent.

The holding in the majority opinion is in direct conflict with the law of this state in two respects: First, it establishes a new rule of law in modification proceedings. Second, a trial court may now modify the support and maintenance provisions of interlocutory and final decrees of divorce without any showing whatsoever of changed circumstances on the part of the payor, and the *undisclosed expectations* of a party to a contract may be considered in absolving that party from an improvident contract. Both of these holdings will cause untold confusion in fields of law where confusion had not heretofore existed and where it should not exist. In the ensuing opinion I will set forth all of the testimony to be found in the record tending to show that there had been such a change of circumstances as the law contemplates should exist before support and maintenance provisions in a decree of divorce may be modified. I will also set forth all of the evidence in the record relative to the oral contract upon which the support provisions in the decree was based. It is entirely clear from the record that the majority opinion is based on something *other* than the law and the record in the case at bar.

In January, 1952, plaintiff husband, Charles, sued for divorce alleging desertion and extreme cruelty; Geraldine answered and cross-complained for separate maintenance alleging extreme cruelty. During the trial of the case a discussion of a financial settlement was had in the judge's chambers as a result of which Geraldine reluctantly agreed to seek a divorce rather than separate maintenance. After the conference the parties orally agreed that Charles would

pay $50 per month for the support of Geraldine and $100 a month for the support of each of the two children. It was agreed that if a divorce were obtained the provisions of the oral agreement, which was orally approved by the court, would be incorporated in the decree.

The interlocutory decree awarded a divorce to Geraldine on the ground of Charles' extreme cruelty, and Geraldine was given sole custody of the two minor children. The decree ordered Charles to pay to Geraldine the sum of $200 per month for the maintenance and support of the minor children and the sum of $50 per month for her support and maintenance.*

On March 2, 1954, just prior to the entry of the final decree of divorce, Charles filed a motion for an order modifying the interlocutory decree to delete the provisions for support of the children and Geraldine and to substitute therefor a provision for $50 per month support for each of the children. It was stipulated by the parties, and ordered by the court, that Charles' motion to amend the provisions of the interlocutory decree would encompass the provisions of the final decree as well.

After a hearing, the court granted Charles' motion to modify on "grounds of change in circumstances and inability of [Charles] to pay order. [Charles] to pay $150 per month and $1.00 to wife for alimony until further order of Court. . . ."

In his affidavit in support of his motion for modification Charles averred that the support provisions were "based upon an oral agreement between said parties at the time of the trial of said action, and that said oral agreement was approved by the court and made the basis for said judgment; that affiant entered into said agreement *upon the hope and expectation that his earnings and monthly income would be substantially increased, either in the position in which he was and is now employed or in another position which he was expecting to take shortly after the entry of said judgment; that neither of these expectations were realized*; that as a result affiant has never been able to make payment under said judgment; that his total take-home pay and income from all sources is $338.62 per month; that his personal and business expenses exceed $322 per month; that affiant has no property,

---

*There was no reference to any agreement between the parties; there was no reference to any termination date for the payment of child support and/or support and maintenance for Geraldine.

goods or income of any kind which he may use to comply with said judgment, nor no prospects of any increase in his earnings in the immediate future. . . .'' (Emphasis added.)

It is Charles' position that the original award of $250 was agreed to by him because of his *disclosed* expectation that he would receive a raise in salary or be employed by another firm where he would receive a larger salary; that the failure of either expectation to materialize constituted such a change in circumstances as to warrant a modification of the support provisions. Geraldine's position is that there has been no change in Charles' financial circumstances in the period between the time of the original award and the motion for modification; that Charles' expectations had no bearing on the original agreement and were not disclosed at that time.

It is not disputed that Charles' income (with the exception of an additional deduction of $2.00 for increased social security payments) remained absolutely the same. During the period subsequent to the interlocutory decree and just prior to the time of his motion for modification Charles paid no part of the support and maintenance ordered by the interlocutory decree. Just prior to his motion for modification he borrowed the sum of $3,200 from his mother and fulfilled his obligation for that period of time.

Assuming for the moment that Charles' expectations of a higher salary or more lucrative position could form a legitimate basis for a support and maintenance award, the first question to be discussed is whether or not Charles' expectations were disclosed at the time of the original award. *All the evidence in the record as it relates to this point will be set forth herein.*

The affidavit of Edward L. Barry, the attorney for Geraldine at the time of the original award, contains this statement: ''In aid of a settlement, there was a conversation between the attorneys and in the presence of Judge Wollenberg on the subject of custody of the children and financial support. Affiant [Barry] took the position that a total of somewhere between $400 and $500 per month should be paid for the support of defendant and the children but affiant does not remember the exact figure which he proposed. Counsel for plaintiff suggested a much lower figure, something less than $250 per month, saying that plaintiff could not pay the amount demanded by affiant.

''Thereupon there was a discussion as to what amount plaintiff could and would pay, and the attorneys agreed that

the sum of $250 per month was a proper amount to be paid as support money for defendant and the children and that this amount would be divided at $100 per month for each child and $50 per month for defendant. It was also agreed that current dental bills of the children and a bill of Best & Co. would be paid by defendant. The parties then and there agreed that defendant as cross-complainant would take a decree of divorce provided that she had evidence to support such decree, and that she would have the custody of the children and that plaintiff, as cross-defendant, would be required to pay the sum of $100 per month for the maintenance and support of each of the minor children and the sum of $50 per month for the maintenance and support of defendant and cross-complainant. It was also agreed that plaintiff would be required to pay the bill of Best & Co. in the sum of $189.45 and the current dental bills of the minor children of plaintiff. I do not know whether or not either the Best & Co. bill or the dental bills have been paid.

''The oral agreement made in the chambers of Judge Wollenberg, as set forth above, was approved by him verbally and it was agreed that if a divorce was obtained, all of the provisions of said oral agreement would be incorporated in the decree. Thereupon the case proceeded to trial and the court ordered judgment for divorce in favor of defendant and cross-complainant and also the other matters above mentioned and on February 26, 1953, the interlocutory decree of divorce was submitted to counsel for plaintiff and cross-defendant and approved by them and signed by Judge Wollenberg. Said interlocutory decree includes the matters above set forth plus an allowance for attorneys' fees and costs, which allowance has been paid.

''The sum of $250 per month was not conditioned upon any increase in earnings. Nothing was said about the provisions of the decree being based upon anything which was to take place in the future. Nothing was discussed or considered which involved any question as to future payments. . . .''

Mr. Barry's affidavit was not controverted. *Charles' affidavit, heretofore quoted, does not aver that he disclosed his expectations.*

The following testimony was adduced at the hearing on the motion for modification:

After testifying that he worked as a salesman at the time of the original award and that his salary was $338.62 a month, he was asked:

"Q. [By counsel for Charles] : Now, at that time, at the time the entering of this decree of divorce, did you have pending any negotiations for any other employment at that time?" Counsel for defendant objected on the ground that the question was "irrelevant, incompetent, and immaterial, as to what he was negotiating for.

"THE COURT: It might tend to show what his condition was, financially, at least. It might show hope, anyway.

"THE WITNESS: I was at that time contemplating taking a position with another record firm, and had been interviewed for it, and, all things being equal, expected to take it; however, I would have had to start at a somewhat lower salary. However, in my years in the business I have watched this particular firm move their men up, and I expected that, had I taken the job, the same would have happened to me.

"MR. O'BRIEN : Q. And what would you have been making with that firm, if you know at this time?" Counsel for defendant objected. The court then questioned the witness and ascertained that he was still working for the same firm; that he was making $2.00 per month less because of increased social security deductions; that if he had taken the other position he would now be making "substantially" more. His attorney then proceeded to question him:

"Q. At the time when this divorce was taken, on February 26, 1953, did you anticipate an increase in salary? A. Yes."

Counsel for defendant objected to the question and answer as "speculative. His expectations are of no consequence. The question is whether there is any difference now from what there was then." The court stated that he wanted to know "this man's frame of mind, what bearing that has on his financial condition——

"MR. O'BRIEN : Q. May I ask you this : *Wasn't it a fact that the possibility of your raise—of a raise in your position—wasn't that discussed between us, including counsel for your wife?*" After this question follow three pages of objections and colloquy between court and counsel. Then the following occurred : ·

"MR. O'BRIEN : Q. *Did you answer my last question, whether or not the expectancy of a raise on your salary was discussed by you and the attorneys for your wife?*

"MR. LIVINGSTON [counsel for defendant] : That involves another question.

"THE COURT: You may reserve your same objection.

"MR. LIVINGSTON : I don't see how anything that is merged

into an agreement which, in turn, is merged into a judgment of the Court is admissible in evidence. That is an entirely different principal. [Sic.]

"THE COURT: I want to know this man's frame of mind, so that will be considered part of the same principal [sic].

"THE WITNESS: *Yes.*

"MR. O'BRIEN: Q. And in those discussions you stated that you expected a raise within 18 months of your employment?

"MR. LIVINGSTON: Same objection.

"THE COURT: I don't think the agreement itself is pertinent. Did you expect a raise, *regardless of what you said to anybody?*

"THE WITNESS: Yes.

"THE COURT: And was that expectation used by you as a basis for the payments—the proposal as to what you would pay?

"THE WITNESS: Yes." (Emphasis added.)

I find no other evidence in the record concerning the disclosure, or nondisclosure, of Charles' expectations at the time of the original award. I find no answer by Charles to his attorney's question other than the equivocal "yes" which seems to be an erroneous answer to the question as to whether or not he had answered the question concerning disclosure. It appears, however, from the questions asked that the trial judge was of the opinion that the disclosure or non-disclosure of Charles' expectations at the time of the original agreement was immaterial. It will be recalled that he asked Charles if he expected a raise *"regardless of what you said to anybody?"*

If it were not for the uncontroverted affidavit of Mr. Barry, counsel for defendant at the trial of the divorce action, which the parties stipulated might be considered on appeal, we could assume, in line with the rule set forth in *Russ* v. *Russ,* 68 Cal.App.2d 400, 405 [156 P.2d 767], *Leupe* v. *Leupe,* 21 Cal.2d 145, 151-152 [130 P.2d 697], and *Valentine* v. *Valentine,* 47 Cal.App.2d 438, 440 [118 P.2d 17], that as the record of the former hearing is not before us, we cannot say that the proof was the same as that adduced at the original hearing and that we must assume that other and different facts were established at the second hearing. It has been here stipulated (Cl.T. 26) that no testimony was taken at the trial of the divorce action concerning the amount or source of Charles' income. This does not appear to be a case in which there is a conflict in the evidence so that we must resolve

those conflicts in support of the order appealed from (*Werner* v. *Werner*, 120 Cal.App.2d 248, 251-252 [260 P.2d 961]; *McKee* v. *McKee*, 108 Cal.App.2d 488, 490 [239 P.2d 37]).

Since the record shows that Charles did not disclose his expectations of either a better position or an increase in salary at the time of the original award, and that the trial judge considered disclosure of those expectations immaterial, should the failure of those expectations to materialize constitute such a change of circumstances as to warrant a modification of the support award? Or did the trial court abuse its discretion in its order of modification?

No California case bearing upon this point has been called to our attention and independent research has revealed none. There is an Alabama case where the question was considered although it does not appear from the opinion whether or not the husband's anticipated increase in income was revealed at the time of the original award. In *Colton* v. *Colton,* 252 Ala. 442 [41 So.2d 398, 399], where the alimony awarded was based on· agreement of the parties, it was held: ''The wife was granted the divorce. We must proceed on the assumption that the decree rendered was equitable and fair. *Any antici-pated increase in income on the part of the husband at that time, which may not have materialized, cannot be considered as a ground for reducing the alimony payments to the former wife.''* (Emphasis added.) (See also *Aiken* v. *Aiken,* 221 Ala. 67 [127 So. 819].) The rule in California is well established that there must be a showing of changed circumstances before an award of alimony may be modified (*Simpson* v. *Simpson,* 134 Cal.App.2d 219, 224 [285 P.2d 313]; *Ralphs* v. *Ralphs,* 86 Cal.App.2d 324, 325 [194 P.2d 592]; *Moore* v. *Moore,* 133 Cal.App.2d 56, 58 [283 P.2d 338].) A brief summary of the facts presented here shows that Charles' income has remained the same as it was at the time of the interlocutory decree (with the exception of the increased $2.00 social· security deduction heretofore mentioned); he is employed in the same position with the same company. Geraldine is living with her family in Illinois in a home she helped her father to purchase with the proceeds of sales of property received by her earlier from Charles; the minor children live with her; she is of necessity unemployed due to an agreement with her parents that she remain at home and care for the children; her parents and Charles' mother have assisted her financially. The Colton case appears to be in line with California cases holding that the undisclosed intentions of a party

to a contract do not furnish a basis for its modification (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133 [48 P.2d 13]; *Bell* v. *Minor*, 88 Cal.App.2d 879, 882 [199 P.2d 718]). In the Brant case this court said: "But it is now a settled principle of the law of contract that the undisclosed intentions of the parties are, in the absence of mistake, fraud, etc., immaterial; and that the outward manifestation or expression of assent is controlling. This is the 'objective' standard, established by the modern decisions and approved by authoritative writers. (See *Zurich Gen. Acc. etc. Co.* v. *Industrial Acc. Com.*, 132 Cal.App. 101 [22 P.2d 572]; *McConnell* v. *Lamontagne*, 82 N.H. 423 [134 A. 718]; 1 Williston, Contracts, § 21, p. 21; 4 Wigmore, Evidence, 2d ed., p. 191; Rest., Contracts, § 71.)" It was also held in *Leo F. Piazza Paving Co.* v. *Bebek & Brkich*, 141 Cal.App.2d 226, 230 [296 P.2d 368], that "Both sides also agree that in determining whether there has been a mutual consent to contract the *courts not interested in the subjective intent of the parties, but only in their objective intent—that is, what would a reasonable man believe from the outward manifestations of consent.* (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128 [48 P.2d 13]; *Canavan* v. *College of Osteopathic Phys. & S.*, 73 Cal. App.2d 511 [166 P.2d 878].)" (Emphasis added.) Inasmuch as here there is *no* showing in the record that Charles ever disclosed his expectations of increased income at the time the agreement was made, and that the trial judge considered disclosure immaterial, it appears that there is no merit to his argument that the frustration of those expectations constituted a sufficient change of circumstances to warrant a modification of the alimony and support award.

The majority opinion states that "At the modification hearing, plaintiff husband testified that at the time of the divorce trial he had been working for a record firm about a year and a half; *that he anticipated an increase in salary as of that time, and a further raise later; that he had also been negotiating with another company for a better position, with 'substantially more' money*; that neither of these expectations materialized and. . . ." What Charles actually testified to has been heretofore set forth. He also said that he had been "contemplating" taking a job with another company where he would have had to start "at a somewhat lower salary" although he had seen that company "move their men up"; and that he thought if he had gone with the company he would have been making "substantially more" money; he also testified that he

had, at the time of the divorce, been working for a year and a half with no raise in salary. There was absolutely no evidence that his hope of receiving a raise, or a better position had ever been communicated to anyone, either prior to, or at the conference between the parties and their counsel in chambers.

The majority concludes that plaintiff husband's undisclosed "great expectations" constituted the basis for his agreement to make the support payments originally provided. "These appear to have been reasonable expectations resting on reasonable prospects and since the original support order was based, in part at least, on his consent, the circumstances which motivated that consent were material to that order." The majority opinion then cites *Webber* v. *Webber,* 33 Cal.2d 153, 160 [199 P.2d 934], *McGann* v. *McGann,* 82 Cal.App.2d 382 [186 P.2d 424], and *Pencovic* v. *Pencovic,* 45 Cal.2d 97 [287 P.2d 501], for the proposition that the court may make an alimony award based not on the husband's actual earnings but on his ability to earn money, "his future prospects."

The cases cited in the majority opinion are not authority for the situation prevailing in the case at bar. In *Webber* v. *Webber, supra,* we reversed the trial court which had, we found, prejudged the case and had himself "waived" any support for the wife. The husband had testified that he had made from $40 to $47 per week "take-home-pay"; that he had not sought other employment "although he could have gone to work for $140 a month" but had not done so because of the trial coming up, but stated he could get another job. We held, after discussing defendant husband's testimony concerning his ability to earn money and get another job, that not only his actual earnings but his ability to earn money affected the propriety of an alimony award. In the case at bar, Charles agreed to the monthly payments knowing that he was then earning a certain sum per month. If his expectations of a better position or more money entered into his calculations, they were not disclosed to anyone. The affidavit of Geraldine's attorney shows that at the time Charles agreed to the payments, there was a discussion as to "what amount plaintiff could and would pay"; that "the sum of $250 per month was not conditioned upon any increase in earnings. Nothing was said about the provisions of the decree being based upon anything which was to take place in the future. Nothing was discussed or considered which involved any question as to future payments."

In *McGann* v. *McGann, supra,* the defendant was engaged in the practice of dentistry. The evidence adduced showed that defendant's income during the five months of his practice (after returning from the service) had increased substantially each month. The court reluctantly affirmed a very low support award but noted that the plaintiff wife had the right to apply again for a change in the allowance. It was concluded that "the court's error in failing to consider the matter of the defendant's earning ability is without prejudice, for to grant an award on future earning ability based on such a short actual experience of practice might be too speculative, especially as the amount awarded has no aspects of finality. If his earnings have continued at the same rate, or increased, the court, upon application, necessarily will be required to award a substantially larger sum." In the case at bar Charles' earnings were known at the time he agreed to make the payments. Any undisclosed expectation of a better position or more salary at his present job (especially in view of the fact that he had been working for a year and a half without an increase) would surely be much too speculative to consider even had such expectations been disclosed which they were not.

In *Pencovic* v. *Pencovic, supra,* we specifically held that there was "ample evidence of changed circumstances and of defendant's financial ability to meet his children's needs and of his ability to earn money in the future." It will be recalled that the defendant was the founder of the "Wisdom, Knowledge, Faith, and Love Fountain"; that he as "Master" of this religion received large donations of money from the members and that we held that these donations were, as found by the trial court, in reality compensation for his services. We also noted that he was an "able-bodied man" and that the trial court could reasonably conclude that he had the earning capacity to support his ill wife and children. The record there showed that defendant had earned a good salary; that he had received, from the "Fountain" funds with which to support his family, etc.

The "earning ability" of the payor in the cases just discussed was based on past performance and evidence of what had been earned and what could be earned. *The conclusion reached by the court in each of the above cases was not based on the premise that the payor had an undisclosed expectation of making more money at the time he agreed to the support payments.*

As an alternative ground for urging the affirmance of the modification orders, Charles contends that the fact that he was forced to borrow money to pay the accumulated support payments is a sufficient showing of changed circumstances. Charles relies on *Becker* v. *Becker,* 64 Cal.App.2d 239 [148 P.2d 381], and *Shulman* v. *Shulman,* 125 Cal.App.2d 120 [269 P.2d 923], for the proposition that the incurrence of financial obligations to third parties is a proper subject for consideration on a motion to modify an alimony award.

In the Becker case, *supra,* the court noted that the record of the first hearing was not before the court and that, therefore, the rule set forth in *Leupe* v. *Leupe,* 21 Cal.2d 145, 151 [130 P.2d 697], was controlling. It was also stated that the wife owned her own home, ''had the ability to do some work,'' and was able to meet her own needs at least in part; that the husband had remarried, earned $50 per week and was indebted in· the sum of $150 which he had borrowed to pay on account of alimony. The court indulged in the presumption, in the absence of a record of the testimony taken at the time of the original award, that other and different facts were established at the time the alimony award was modified. As I have heretofore pointed out, the record here shows, without conflict, that Charles' circumstances have remained precisely the same as they were at the time of the original award. His indebtedness to his mother in order to pay arrearages in the support and maintenance ordered is the obvious result logically following from the fact that he had made no effort to pay any part of the alimony and support provisions of the interlocutory decree. Standing alone, it is my opinion that this indebtedness cannot be considered a sufficient change in circumstances to warrant a reduction in the support provisions of the interlocutory and final decrees of divorce. In *Shulman* v. *Shulman, supra,* the court held that the ''record affirmatively shows evidence of change in condition since the prior hearing. There is testimony that respondent's income for the year 1951 was $3,156.43, and that during that year respondent paid appellant $2,880, and that in 1951 defendant sold a diamond ring in order to realize $1,500. It also appears that appellant in October, 1951, transferred her home to her sister without consideration, although this house was worth $11,000 less an encumbrance of $2,500.'' The court also pointed out that the husband had paid to his former wife more than his taxable profit from his business; that he had borrowed $2,000 from a bank and $1,000 from a private individual; that he had

mortgaged his truck and car to secure payment; that he had been in a wheel chair for the entire period and so required more money for his personal living expenses because he was so afflicted. It is quite obvious that the situation in the Shulman case is not at all similar to the one under consideration.

In the case at bar, Charles had never supported his wife and children since the divorce; she was living with her parents under an agreement which provided that she had to live at home and care for the children rather than seeking employment; her parents and Charles' mother had supported her and the children.

While it is quite true that a modification of an award of alimony pursuant to section 139 of the Civil Code rests within the discretion of the trial court and that its order may not be set aside without a clear showing of an abuse of discretion, it appears to me that the modification here involved was, in the absence of any showing in the record of a change of circumstances, an abuse of discretion. (*Ralphs* v. *Ralphs*, 86 Cal.App.2d 324 [194 P.2d 592]; *Molema* v. *Molema*, 103 Cal. App. 79 [283 P. 956]; *Snyder* v. *Snyder*, 219 Cal. 80, 81 [25 P.2d 403].)

I would reverse the order appealed from.

Appellant's petition for a rehearing was denied May 8, 1957. Carter, J., was of the opinion that the petition should be granted.