[Civ. No. 17169.   Second Dist., Div. Two.   Dec. 9, 1949.]

ALICE H. BUTLER, Appellant, v. JULIA W. STRATTON, Respondent.

Potter, Potter & Rouse and Bernard Potter, Jr., for Appellant.

Daily & Gallaudet and Edward Gallaudet for Respondent.

MOORE, P. J.—Appellant sued to quiet title to Lot 27, Tract 393 in Glendale on the ground that in her lifetime Mary V. C. Stratton, herein referred to as Mary or decedent, had by her last will and testament devised such realty to appellant and that the will had been duly admitted to probate. As an affirmative defense respondent alleged that decedent had by grant deed dated August 1, 1945, conveyed the lot to her and she pleaded the conveyance *in haec verba*. No affidavit denying the deed having been filed within 10 days as required by law (Code Civ. Proc., § 448), its genuineness and due execution were deemed admitted. The greater portion of two days having been consumed by the introduction of appellant's evidence, by colloquies of court and counsel and by arguments, the action was submitted on authorities to be filed. Six days thereafter appellant filed her motion to reopen the case and to set aside the order of submission and for an order permitting her to file an "affidavit denying the genuineness and due execution and delivery of that certain deed" contained in the affirmative defense. From the judgment denying her relief comes this appeal. A purported appeal from the order denying her motion to reopen the cause for the purpose of filing an affidavit under section 448, *supra*, is dismissed.

The entire proof adduced by appellant to substantiate her title is as follows: (1) Conveyance of Lot 27 by Alma Watson to decedent and her husband, John W. Stratton, in 1922; (2) John's decease; (3) their son and his wife Julia entered into the Stratton home (Lot 27) in 1931 where the son subsequently died; (4) August 1, 1945, Mary executed and delivered to Attorney Cannon the grant deed pleaded in the answer; (5) August 21, 1947, Attorney Emery visited Mary at her home and conversed with her with respect to the preparation of her will. He drew the will which contained the following clause: "I hereby give and devise to my sister Alice H. Butler, that certain parcel of improved real property, commonly known as 217 West Garfield Avenue, Glendale, California. If my sister fails to survive distribution to her of said devise, I give and devise the same to my sister, Eva H. Howell, now of St. Louis, Missouri." The attorney then testified that in the conversation Mary mentioned the parcel described in the quoted passage. "She said that she wanted the house where she then lived and the rest of her estate to go to her daughter-in-law Julia and if she was deceased, then to be equally divided between the sisters of the deceased, whom

I have just named. I asked her if she had a deed to these properties and she said she did. I asked her if it was available for me to see . . . She said that was not necessary because she owned the property . . . She said, 'Well, my papers are in the safe deposit box and I am not able to go there; I don't want it disturbed, because I don't want Julia to know anything about this. I don't want her to know what disposition I am making of my property.' ''

Following the testimony of Emery, appellant rested her case, but when the court reconvened at 2 p. m., she introduced the court files in the proceedings (1) terminating the tenancy of John W. Stratton; (2) terminating the tenancy of Fred W. Stratton, the son; and called and cross-examined respondent who established that when she and Fred moved into the Stratton home in 1931 Mary gave them the property and "said it would be our home and all." Julia continued to live there after Fred's decease in 1940; never had any conversation with Mary with regard to occupying the house. "She said it was ours . . . was bought for us in '22 and each time there was a letter they would always say there was a home if we would come and live there."

█ Appellant complains that she was precluded from controverting the deed pleaded by respondent. A scrutiny of the transcript from the opening of the trial on November 3 to its adjournment on November 4 discloses no offer of competent proof that was rejected. Although appellant twice rested before submission on November 4, on her motion the court allowed her to reopen the case for other evidence or for the purpose of "putting on additional evidence with regard to title in plaintiff." The court repeatedly stated its desire to adjudicate the case on its merits and adjourned to the following day in order to enable appellant to offer further testimony. However, on that day no evidence was presented except the deed of Watson to Stratton. The claim that the court sustained an objection to the question propounded to Emery whether decedent mentioned Lot 27 is refuted by the court's declaration: "If that is the purpose . . . I will overrule the objection." █ To the complaint that she was not permitted on her direct examination to introduce evidence as to the deed pleaded by respondent, there are two answers: it is the prevailing practice to meet proof of affirmative defenses after defendant has rested. Also, it is the duty of the court to determine the order of proof. (*Turner* v. *Southern Pac. Co.*, 142 Cal. 580, 582 [76 P. 384].)

■ Objection to the question asked Julia as to whether she resided in the Stratton home by permission of Mary was correctly sustained as calling for a conclusion. ■ The inquiry of Julia as to whether she "ever had possession of a deed prior to August 1, 1945" was immaterial in view of the evidence that she commenced her term of residence there many years prior to that time on the invitation of decedent, and the deed of decedent was given to her about the time of its date. The court was generous in assisting appellant to make proof of her claims by discussing appellant's offers of evidence and by explaining the fallacies of some of her contentions.

■ It is contended that a prima facie case was established by the specific bequest of Lot 27 to appellant and that title vested in appellant upon the decease of Mary. It is the law that title of a decedent's property vests in the devisees and legatees upon the death of the testator subject to administration (*Mears* v. *Jeffry,* 80 Cal.App.2d 610, 617 [182 P.2d 294]) but if one who contends that he is the sole devisee admits in the same breath that the testator had conveyed the property to another at a time antedating the will, of what avail is the bequest? The fact that the testator and the grantor are the same person adds no such virtue to a devise as will render it paramount to a prior grant. The fact that there was never a decree of distribution in the estate of decedent is of no advantage to appellant; on the contrary, it renders hollow the bequest. Such a decree signifies only that the bequest to a devisee has passed to the distributee free of all liens of creditors and of expenses of administration.

The fact that the will of decedent was admitted to probate proves nothing with respect to the title of Lot 27 at the time of decedent's death. It is a fact of frequent occurrence that the author of a will has already specifically devised his properties to other devisees or that he subsequently alienates the same by will, deed or mortgage. The only significance of the probate of Mrs. Stratton's will is that the devisees named therein stood with respect to her estate in the same position she occupied at death. Having nothing at her death, she left nothing to them.

■ Appellant argues that since Mary exercised ownership of the property, held the record title thereto and declared to her attorney that she owned it—these facts give rise to the presumption that she did in fact own it, and the court therefore erred in not quieting title in her. She asserts that the manner of testatrix' dealing with the property is inconsistent

with the thesis of the delivery of a deed to respondent. Such conclusion does not follow. She was an ill woman at the time of executing her will. The more rational explanation of her bequest is that probably she had then forgotten recent events while her mind was dwelling on those dear to her in yesteryears. Or she may have nebulously conceived that since she had already conveyed the lot to Julia, she would provide for it to go to her sisters should respondent predecease her. This thesis is justified by the quoted language of the will. Her demonstrations of ownership of Lot 27 in August, 1947, were no more emphatic than at the time of her grant to respondent in 1945.

■ It is contended that since a confidential relationship existed between decedent and her daughter-in-law, after the bequest of Lot 27 to appellant had been proved, the burden shifted to Julia to prove that the execution and delivery of the deed to herself were regular and free from fraud, citing *Sparks* v. *Mendoza,* 83 Cal.App.2d 511, 514 [189 P.2d 43]. The facts that she was a daughter-in-law and occupied the same house do not necessarily create a confidential relationship. In *Sparks* v. *Mendoza* the confidential relationship was established, the deed was without consideration, and the grantor had no independent legal advice. None of those factors was established with reference to Mary Stratton. It is a more logical presumption that she sought and received advice before executing the deed in favor of Julia which she knew could not be recalled or nullified by herself.

■ Appellant argues that because the answer is deemed to be controverted (Code Civ. Proc., § 462) the "plaintiff is not precluded from introducing evidence in avoidance of the deed." It is undeniable that appellant might, under her general denial, have introduced evidence to establish that the deed had been stolen or procured by fraud, or any defense against it, except its genuineness and due execution. (*Moore* v. *Copp,* 119 Cal. 429, 432 [51 P. 630]; *Miller* v. *McLaglen,* 82 Cal.App.2d 219, 225 [186 P.2d 48].) As indicated above, the court indulgently encouraged appellant to present any proof at her command so that a judgment might be had on "the merits."

■ Appellant asserts also that she proved without contradiction "that decedent did not comprehend the legal effect of the deed." If such proof was made it was not reported and appellant made no effort to correct the transcript. The

fact that she bequeathed it two years after she had delivered the deed to respondent may occasion other inferences which do not derogate from the validity of the conveyance. That she declared to her attorney that she owned Lot 27 was no more than the conclusion of the decedent who was not available for cross-examination as to prior alienation. ▆ It was not essential for the deed to be in evidence. Its execution, genuineness and delivery were admitted by the pleadings. The rules of pleading and practice do not require supererogation. When a party by his pleading concedes a fact or in open court declares or stipulates the existence of a fact material to the cause of his adversary no proof is thereafter required for a finding upon the matter so confessed. (*People* v. *Hooper*, 16 Cal.App.2d 704, 707 [61 P.2d 370]; *Southern Pac. Co.* v. *Grangers Business Assn.*, 115 Cal.App. 256, 261 [1 P.2d 477]; *Cockrill* v. *Clyma*, 98 Cal. 123, 125 [32 P. 888].)

▆ Appellant contends that section 448, Code of Civil Procedure, is not binding upon a plaintiff who was not a party to the writing and attempts to distinguish *Stoneman* v. *Fritz*, 34 Cal.App.2d 26 [92 P.2d 1035], which, she says, has never been approved by the Supreme Court. There is no legal support or valid reason for such contention. The Stoneman case positively affirms the language of the statute, includes *delivery* in ''due execution'' of the instrument and holds that the rule is applicable even though the plaintiff is not the author of the writing. In deriving such interpretation the court was aided by the presumptions that in executing a writing a party understands his act; that in delivering it he intended the natural consequences thereof; that in conveying his property and in respondent's acceptance of the deed no fraud was perpetrated. (Code Civ. Proc., § 1963, subds. 1, 4, 8, 12, 15, 16, 19, 20, 23, 27, 28, 32, 33, 39.) The Stoneman case is supported by prior decisions of the same import. (*Bank of America* v. *Richardson*, 29 Cal.App.2d 554, 556 [85 P.2d 139]; *Cordano* v. *Wright*, 159 Cal. 610, 615 [115 P. 227, Ann. Cas. 1912C 1044].) It was followed in *Oswald* v. *Northrop Aircraft Co.*, 62 Cal.App.2d 824, 827 [145 P.2d 635]. Despite the clear and forceful language of these authorities appellant insists that the statement in *City of Los Angeles* v. *Watterson*, 8 Cal.App.2d 331 [48 P.2d 87] that section 448 is ''not binding on a party to the action who was not a party to the written instrument pleaded in answer'' is authority only for the general statement that failure to deny due execution of an

instrument within 10 days is tantamount to an admission thereof. The Watterson decision referred to a situation in which the contract in question had been executed by one defendant to another and the plaintiff was in no sense a privy thereto. In the instant action appellant claims to stand in the shoes of decedent as of the moment of her death and therefore was obliged to deny the genuineness and due execution of the deed or by her silence admit its genuineness and due execution.

While the order denying appellant's motion to set aside the order of submission and to reopen the case is not appealable, the legality of such order has been duly considered as a part of the appeal from the judgment. The transcript of the proceedings reveals nothing that would indicate an abuse of discretion in denying such motion. The complaint was filed May 17, 1948. The answer containing decedent's deed was filed June 24, 1948. A stipulation to an amendment to the complaint by interlineation was filed October 26, 1948. The trial was commenced one week later. Although appellant's counsel addressed the court for 15 minutes he offered no evidence but the will, the file in the estate of decedent and the testimony of the attorney who, having interviewed her and prepared the will, gave in evidence the statements made at that time to him by Mary. When both parties rested at noon, adjournment was taken until 2 p. m for argument. At the latter hour appellant moved the court "to reopen the case for the purpose of putting on additional evidence with regard to title in the plaintiff." The motion having been granted, the several court files heretofore mentioned were introduced and respondent was called for cross-examination. During the argument and colloquy with the court for about two hours, appellant finally offered the deed from Watson to the Strattons. Adjournment was taken with the understanding that briefs would be filed "10-10 and 5." Six days later appellant filed her motion to reopen and to be allowed to file a denial of due execution of the deed which was decided adversely to appellant on November 24. The affidavits in support of the motion presented nothing new except averments of statements by the notary whose certificate is attached to decedent's deed. Such matters were immaterial to the question of the due execution of the instrument attached to respondent's answer. There was no offer to prove fraud or undue influence upon decedent by respondent in procuring delivery of the deed. Appellant filed her "Points and Au-

thorities" in support of her motion whereby she pleaded "in the interest of justice" to be relieved from her default in failing to file the affidavit denying due execution of the deed because "the omission was manifestly the result of excusable and understandable mistake of law and excusable inadvertence and neglect." The affidavit of appellant's counsel discloses no fact that had been concealed from him prior to the trial of the case and none that he could not have discovered prior to commencement of the action by the exercise of reasonable diligence. There was no abuse of discretion in denying the motion.

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.