[Civ. No. 34759. Second Dist., Div. Five. Sept. 8, 1970.]

LESTER J. NELSON, Plaintiff and Appellant, v.
SPECIALTY RECORDS, INC., et al.,
Defendants, Cross-complainants and Respondents;
PANDA SOCIETA PER L'INDUSTRIA CINEMATOGRAFICA
S.p.A., Cross-defendant and Appellant.

130

## Counsel

Wyman, Bautzer, Finell, Rothman & Kuchel, Charles L. Fonarow, Swerd-low, Glikbarg & Shimer and Richard H. Floum for Plaintiff and Appellant and for Cross-defendant and Appellant.

Pollock, Pollock, Fay & Baum and Eugene P. Fay for Defendant and Respondent.

## OPINION

AISO, J.—Plaintiff Lester J. Nelson and his assignor and cross-defendant Panda Societa Per L'Industria Cinematografica S.p.A. ("Panda") appeal from the judgment herein which: (1) denies plaintiff recovery on his complaint following a grant of a dismissal (nonsuit)[1] on his counsel's opening statement, and (2) adjudges defendant and cross-complainant Specialty Records, Inc., a corporation ("Specialty"), entitled to recover the sum of $10,000, together with interest thereon, and costs of suit from Panda.

The appellants contend upon this appeal: (1) the trial court erred in denying plaintiff's motion to amend his complaint; (2) the grant of the dismissal was improper; (3) the trial court failed to make findings upon material issues of fact; and (4) certain findings lack evidentiary support.

We have concluded that the judgment should be affirmed for the reasons which we shall set forth below.

### I.

Plaintiff filed his complaint on October 15, 1963, as Panda's assignee seeking recovery of damages from defendants Specialty, Arthur N. Rupe, and others, for an alleged breach of a contract for the sale and purchase of rights to distribute and exhibit a photoplay entitled, "L'Orribile Segreto Del Dr. Hichcock (Raptus—The Secret of Dr. Hichcock)"[2] entered into by Panda and Specialty. For the purposes of this litigation, Panda may be deemed to be the plaintiff as well as the cross-defendant. It is undisputed that plaintiff[3] as assignee had no greater rights than Panda and that he is vulnerable to any defenses or counterclaims which defendants and the cross-complainant had against Panda. (Code Civ. Proc., § 368; *General Motors Accept. Corp.* v. *Kyle* (1960) 54 Cal.2d 101, 113 [4 Cal.Rptr. 496, 351 P.2d 768]; *Bliss* v. *California Cooperative Producers* (1947) 30 Cal.2d 240, 250 [181 P.2d 369, 170 A.L.R. 1009].)

The pertinent portions of the complaint are as follows:

---

[1]The motion for dismissal is construed as a motion for nonsuit upon the opening statement of plaintiff's counsel under Code of Civil Procedure section 581c. (*Gonsalves* v. *City of Dairy Valley* (1968) 265 Cal.App.2d 400, 402-404 [71 Cal. Rptr. 255]; cf. *Jewell* v. *Pierce* (1898) 120 Cal. 79, 85 [52 P. 132].)

[2]This is the complete title of the photoplay as given in the agreement. The name "Hichcock," is spelled without the "t." At other places, the name has been spelled with a "t," appearing as "Hitchcock."

[3]Plaintiff Nelson was the office manager of the law firm which instituted the action and represented the plaintiff in the trial court. Appellants' counsel on this appeal did not handle the case in the trial court.

"VIII

"On or about November 8, 1962, [SPECIALTY] entered into a written contract, . . . with [PANDA] having its registered offices at . . . Rome, Italy . . ., wherein [SPECIALTY] agreed to purchase the distribution rights to a film entiled 'RAPTUS—THE SECRET OF DR. HICHCOCK' (hereinafter referred to as the 'photoplay'), for the sum of $80,000.00, payable $10,000.00 upon the execution of the contract, $35,000.00 payable upon delivery of the *interpositive*[4] of said photoplay, and $35,000.00 payable by a single installment [*sic*] non-interest bearing note payable to Panda ninety days after delivery of the *interpositive*.

"IX

"Panda thereafter shipped *said print* to defendants and *performed all the terms and conditions of said contract to be performed by Panda*. Defendant[s] did, upon execution of said contract, pay Panda the $10,000.00 as required by the contract.

"X

"Panda, upon shipment of the print, duly demanded payment of the balance of the purchase price of $70,000.00 in accordance with the terms of the contract. Defendants, however, refused to accept said print when tendered, have not paid and have refused to pay the amount owing under the contract and have thereby breached the contract between plaintiff [*sic*—Specialty] and Panda.

"        .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"XII

"Only $10,000.00 of said contract price has been paid and there is now due, owing and unpaid to plaintiff from defendants the sum of $70,000.00, together with interest thereon. . . ." (Italics added.)

The contract, dated November 8, 1962, attached as Exhibit "A" to the complaint and referred to and incorporated by reference, provided, inter alia, as follows:

"THIRD: [PANDA] hereby sells, assigns and agrees to deliver on loan to [SPECIALTY] for a period of forty-five (45) days from the date of arrival

---

[4]The distinction between positive and interpositive prints should be noted. The positive print is "nothing more than an exhibition film. It is non-commercial. You *can't make reproductions of it*." The *interpositive print* is the print from which the grantee makes the prints to be distributed and exhibited.

in Los Angeles, for the sum of one thousand United States dollars (U.S. $1,000):

"(a) one (1) *interpositive* of the Photoplay and trailer in commercial condition, such as will enable the processing therefrom of a commercial internegative from which commercial color print of the photoplay may be obtained:

"Besides [PANDA] hereby sells[,] assigns and agrees to deliver to [SPECIALTY] at no cost except shipping charges from Rome to Los Angeles (Calif.; U.S.A.)

". . . . . . . . . . . . . . . . . . " .

"(d) one (1) standard color 35 mm[.] *positive* print of the Photoplay and trailer fully synchronized with music, sound effects and English dialogue shipped no later than *November 20, 1962.*

". . . . . . . . . . . . . . . . . . .

"FOURTH: In full consideration for the sale, transfer[,] grant and assignment of all rights and properties hereunder, [SPECIALTY] agrees to pay to [PANDA] and [PANDA] agrees to accept the sum of eighty thousand United States dollars (U.S. $80,000) in accordance with the following terms and conditions:

"(a) as to ten thousand United States dollars (U.S. $10,000) upon execution of this agreement:

"(b) as to thirty-five thousand United States dollars (U.S. $35,000) upon delivery of the *interpositive* and all materials hereinafter defined as in paragraph THIRD *sections* (a), (b), (c), (*d*), (e), (f), (g), (h), and (i) in Los Angeles which should be in good commercial condition to enable the processing therefrom of a negative from which commercial positive color prints and reproductions may be obtained, together with certification to this effect from Consolidated Film Industries, Hollywood, California. Interpositive shall be delivered by [PANDA] to [SPECIALTY] together with all of the other items referred to in Article THIRD not theretofore delivered not earlier than 90 days nor later than 120 days after the last date for delivery of the English print *in accordance with Section (d) of Article* THIRD. In the event said interpositive is delivered earlier than the earliest date hereinabove set forth, then the obligation of [SPECIALTY] to make payment in accordance with the terms of this Section (b) shall be postponed to the earliest date on which said interpositive is permitted to be delivered under the terms hereof.

"(c) the parties specifically agree that *delivery of the fully synchronized positive print referred to in Section (d) of Article* THIRD and the delivery of the remaining items within the time set forth in Section (b) of Article

FOURTH *on the date or dates in said Sections set forth is a material inducement to the execution of this Agreement* by [SPECIALTY] and that time of *delivery hereunder is of the essence of this Agreement;* Accordingly, *if said items are not delivered on or before the last date for delivery* in accordance with the terms of said Sections and Articles hereinabove in this Section (c) referred to, then [SPECIALTY] *shall have the right and option to terminate this Agreement* by written notice to [PANDA] given at any time after 5 days shall have elapsed from and after the date upon which the respective item was to be delivered and upon sending such written notice from [SPECIALTY] to [PANDA] terminating this Agreement, the same shall be of no further force and effect and the parties shall be relieved of all of their obligations hereunder except that [SPECIALTY] [s]hall return any items delivered by [PANDA], freight and charges collect, to [PANDA] and [PANDA] shall refund the entire sum paid in accordance with Section (a) of this Article FOURTH forthwith upon receipt of such notice terminating this Agreement from [PANDA].

". . . . . . . . . . . . . . . . . . .

"FOURTEENTH: This Agreement shall be construed and interpreted solely in accordance with and governed solely by the Laws of the State of California.

"FIFTEENTH: This Agreement constitutes the entire Agreements between the parties and cannot be modified, except by written instruments executed on behalf of [PANDA] and [SPECIALTY] by their duly authorized respective officers." (Italics added.)

Defendants Specialty and Arthur N. Rupe filed an answer which admitted the allegations of paragraph VIII of the complaint. Answering the averments of paragraph IX of the complaint, they admitted that Specialty had paid Panda $10,000 as alleged, but denied every other allegation thereof and "particularly denie[d] Panda shipped or delivered a print of the photoplay within the time specified in Article Third (d) of said contract or otherwise, or at all." They also denied the allegations of paragraph X of the complaint and affirmatively alleged that although "[SPECIALTY] was ready, willing and able to perform all the terms and conditions of said contract on its part to be performed, *Panda failed to ship or deliver a positive print of the photoplay within the time specified in said contract* and thereby breached the contract between defendant, [SPECIALTY] and Panda." (Italics added.)

As an affirmative defense, defendants alleged that Panda failed to ship a positive print by no later than November 20, 1962, notwithstanding such shipment by such date was a material inducement for Specialty's entering into the agreement, in which time of delivery was expressly

made of the essence. Defendants further averred the giving of a written notice, after the lapse of five days beyond the date required of Panda to perform, terminating the contract except for refund by Panda of the $10,000 down payment to Specialty; that demand for such repayment had been made, but no part of it had been returned to defendants' damage in the sum of $10,000.

Specialty cross-complained against Panda, alleging the making of the contract as averred by the plaintiff, the payment of $10,000 contemporaneous with Panda's execution of the contract in Rome on November 8, 1962, the default in failing to ship a positive copy by not later than November 20, 1962, the demand for repayment of the $10,000, and Panda's refusal and neglect to refund the $10,000.

The case came on for trial before a court sitting without a jury on October 14, 1968.[5] The record reflects that, after a conference in chambers, plaintiff's trial counsel in open court made an opening statement on the basis of which defendants' counsel made a motion for a dismissal (nonsuit), which was granted. In essence, the opening statement was as follows:

The pivotal issue of the law suit is the validity of defendants' contention that Panda breached the provisions of paragraph THIRD (d) of the agreement calling for a shipment of a positive print by "no later than November 20, 1962."

Counsel stated that the evidence would show that: The contract was negotiated in Rome, Italy, by William Hunter who was Specialty's agent. Hunter gave Panda a certified check for $10,000 on November 8, 1962, and took copies of the agreement to be signed by Specialty. Hunter did not arrive back in Los Angeles until November 18th or 19th, so that Rupe [president of Specialty] did not in fact sign the contract on behalf of Specialty Records until November 19th, when he mailed it back under a cover letter, which plaintiff would offer into evidence, apologizing for the delay.[6] On the 19th, Panda had cabled Specialty: "CONTRACT NOT JET

---

[5]This was one day short of five years after the filing of the complaint as the trial court noted as one reason for not permitting an amendment to plaintiff's pleadings.

[6]The contents of this letter read into the record as part of plaintiff's further offer of proof following defendants' motion for dismissal (nonsuit) read as follows:

"We are enclosing herewith a signed copy of the distribution agreement for your motion picture entitled 'Raptus—The Secret of Dr. Hichcock.'

"We regret the delay in returning this contract, but our associate, Mr. William Hunter, was delayed in London and New York and just returned to our office with the contracts today.

"Would you *cable your agent in New York* to immediately rush the print, trailer and whatever other material is available on the above-mentioned film to us at the above address by air freight deferred. Would you please send us a copy of this communication to your agent." (Italics added.)

[*sic*] DELIVERED STOP AS AGREED WE WILL CONSIGN COPY ONLY WHEN RECEIVED CONTRACT REGARDS PANDA ROMA." As soon as Panda received "the signed contract on the 22nd, it wrote to a company in New York," the Sefo Corporation, an importer-exporter, to whom Panda had sent the positive print "sometime prior to the execution of the Agreement between Panda and [Specialty]." For various reasons, which will be related later where pertinent to the discussion, the positive print was not actually shipped until about the middle of January (1963).

On December 4th, Specialty wrote Panda stating that Forno, president of Sefo Corporation, would not ship the positive print claiming that Panda owed Sefo $300. "Now, on December 8th, the evidence will show, Mr. Rupe purported to rescind the contract on the grounds that Panda had failed to comply with the 'time of the essence' provision in regard to the shipment of the positive print."

Subsequent negotiations to iron out the dispute were conducted by the parties upon the express condition that such negotiations would be without prejudice to any rights and liabilities of either party under the contract. Ultimately Specialty declined to accept the photoplay when Rupe decided that "it wasn't commercial" after examining it for "commercialability."

Plaintiff's counsel further stated that Panda was not responsible for any derelictions of Sefo Corporation, as Sefo was not a person or corporation "within the reasonable control" of Panda and thereby coming within the provisions of paragraph TENTH of the agreement. This paragraph was a type of a *force majeure* exculpatory clause including the acts of carriers, etc., and acts of "any other person, firm, or corporation . . . not within the reasonable control of either party."

Defense counsel, in moving for a dismissal (nonsuit), argued that plaintiff's statement manifested a failure to perform in accordance with paragraph THIRD (d) of the agreement pleaded in paragraph VIII of the complaint and admitted by defendants' answer, and that any evidence to show a waiver or excuse of the performance called for by those provisions in the contract would constitute an impermissible material variance from the pleadings, which in effect alleged a contract and complete performance thereunder. The payment to Panda of $10,000 on November 8th, defense counsel further argued, took the transaction out of any statute of frauds requirement of a writing signed by Specialty Records and a valid contract came into existence as of November 8, 1962. Defense counsel also represented that the deposition of a Mr. Serpe, who had been appointed by Panda to attempt to expedite Sefo Corporation's shipment of the positive print to Specialty Records, would prove that Forno was the

American representative of Panda at all times in question raised by plaintiff's counsel in his opening statement.

Plaintiff's counsel then moved for permission to amend his pleadings to allege that the time of shipment of the positive print being of the essence as set forth in paragraph THIRD (d) "was waived or non-enforceable or that the defendants are estopped, or whatever characterization you want to give by reason of the fact that they admit themselves that they did not return the contract until after the date of shipment." This theory, he contended, would not come as any surprise to defendants who were informed of it by supplemental answers of January 5, 1968, to interrogatories propounded by defendants and cross-complainant Specialty. Counsel also indicated that he believed that performance by Panda had been excused because defendants had made compliance impossible.

The court's comment reflects its view that the cable of November 19th sent by Panda was a unilateral change of terms of a preexisting contract. It also noted that the complaint had been filed on October 15, 1963, and ascertained that counsel then trying the case had been counsel for approximately 18 months, which afforded him ample time within which to amend his pleadings. Counsel replied that he had mistakenly believed that the case had been pretried and that the issues he now sought to raise by amendment to his pleadings had been raised at the pretrial hearing. The court denied the motion to amend and granted defendants' motion to dismiss (for nonsuit).[7]

---

[7]"THE COURT: You didn't allege that [waiver of provisions of paragraph THIRD (d)] in your Complaint and you didn't make any offer to amend it either, did you, after five years? You filed this Complaint on October 15, 1963. How long have you been counsel in this case?

"[Plaintiff's counsel]: I have been counsel for approximately 18 months, your Honor."

"THE COURT: Well, you had plenty of time, didn't you?

"[Plaintiff's counsel]: As I indicated to the Court in Chambers, I mistakenly believed this case had been pretried and the issues raised at that pre-trial.

"THE COURT: Your motion to amend is denied. [¶] Do you have anything further to make in connection with the contention on the motion to dismiss?

"[Plaintiff's counsel]: I would say that we have then raised in the Complaint the fact that we have performed the contract.

"THE COURT: Well, your own admission in your opening statement is that you haven't performed on the contract.

"[Plaintiff's counsel]: As a matter of law, I say we have performed on the contract. When someone makes it impossible for me to perform, I don't have to perform.

"THE COURT: Then you haven't alleged any excuse whatsoever for non-performance or any of the grounds in this particular paragraph that that was the approximate [sic] cause of the delay or any reason for it, have you?

"[Plaintiff's counsel]: It is not in our Complaint, your Honor. [¶] I again renew my motion. I just find it difficult to believe that you are going to prevent us from going to trial when the defendant [sic] has known since January of 1968, that it is

Thereafter, the court proceeded to take evidence on the cross-complaint. Objection was registered and sustained to plaintiff's (cross-defendant's) counsel propounding, on cross-examination of cross-complainant's witness, a line of questions seeking to elicit proof of a waiver of the requirements of paragraph THIRD (d) since no affirmative defense raising the issue had been pleaded in cross-defendant Panda's answer to the cross-complaint. Specialty was awarded recovery on its cross-complaint against Panda in the sum of $10,000, plus interest thereon from December 10, 1962 (date of demand),[8] together with costs of suit.

Judgment in conformity with the foregoing rulings and orders was entered and appeal therefrom taken by plaintiff Nelson and cross-defendant Panda.

## II.

The pivotal issue on appeal is whether the trial court abused its discretion in denying plaintiff's motion to amend his pleadings following defendants' motion for dismissal on plaintiff's opening statement. Without amendment, plaintiff upon defense objection was precluded from introducing any evidence to show a waiver or excuse for not complying with the provisions of paragraph THIRD (d) of the agreement, the making of which had been admitted by the pleadings. ■ "The rule is well understood that a recovery on proof of excuse for nonperformance cannot be had on an allegation of full performance" (*Kirk* v. *Culley* (1927) 202 Cal. 501, 505-506 [261 P. 994]), which was the situation here even if the allegations of paragraphs VIII and IX of the complaint be construed most favorably to plaintiff. It was also stated in *Daley* v. *Russ* (1890) 86 Cal. 114, 117 [24 P. 867]: "The rule is fundamental that the complaint must allege either performance or a valid excuse for nonperformance. One is not the same as the other. And if the plaintiff did not perform the contract, but relies upon the consent of the defendants as an excuse, he must set forth the excuse in his complaint."

---

no surprise, your Honor, and I am sure your Honor knows the cases as well as I do that permit amendments with extraordinary liberality.

"THE COURT: You expect the defendant to come here and face a defense which you are going to raise for the first time?

"[Plaintiff's counsel]: I am not raising it for the first time, your Honor.

"THE COURT: It doesn't make any difference. As far as the pleadings are concerned, it is a surprise to him. . . . I am sure that you are entir[e]ly familiar with the rules of this court in connection with pleadings and what the issues are as set forth in the pleadings, and if you don't seek to take advantage of the right that you have to amend, that's your responsibility. [¶] The motion is granted to dismiss."

[8]Rupe testified that he elected to rescind on December 10, 1962, and gave written notice thereof. Plaintiff's counsel stated the date as December 8, 1962, but this appears to have been in error.

■ It is the contemporary policy of the law to permit amendments to pleadings even at the commencement of trial so that the litigation may be fully tried, but an amendment is to be granted only if the trial court in the exercise of its discretion finds that it will subserve the interests of justice. ■ If by such amendment, the opposing party requires time for preparation to meet a new issue, a continuance is to be allowed. (Code Civ. Proc., §§ 473, 576.)[9] ■ The ruling of the trial judge will not be disturbed upon appeal absent a showing by appellant of a clear abuse of discretion. (*Vogel* v. *Thrifty Drug Co.* (1954) 43 Cal.2d 184, 188 [272 P.2d 1]; *Moss Estate Co.* v. *Adler* (1953) 41 Cal.2d 581, 585 [261 P.2d 732]; *Plummer* v. *Superior Court* (1963) 212 Cal.App.2d 841, 843 [28 Cal.Rptr. 294]; 2 Witkin, Cal. Procedure (1954) Pleading, § 594, p. 1605.) ■ We do not find an abuse of discretion under the circumstances of this case. `

■ A long unexcused delay may be the basis for denying permission to amend pleadings (*Moss Estate Co.* v. *Adler* (1953) *supra*, 41 Cal.2d 581, 586; *Bernstein* v. *Financial Indem. Co.* (1968) 263 Cal.App.2d 324, 328 [69 Cal.Rptr. 543]; *Stanley* v. *Kawakami* (1954) 127 Cal.App.2d 277, 279 [273 P.2d 709]), especially where the proposed amendment interjects a new issue (*Vogel* v. *Thrifty Drug Co.* (1954) *supra*, 43 Cal.2d 184, 189; *Donahue* v. *Ziv Television Programs, Inc.* (1966) 245 Cal.App.2d 593, 611 [54 Cal.Rptr. 130]), which may require further investigation or discovery procedures (*Waxman* v. *Superior Court* (1966) 246 Cal.App.2d 668, 671 [54 Cal.Rptr. 924]; *Hayutin* v. *Weintraub* (1962) 207 Cal.App.2d 497, 508 [24 Cal.Rptr. 761]).

■ Specialty, by its letter of January 4, 1963, had put Panda on notice that it was "taking advantage of the time limit in . . . [the] agreement to cancel [the] contract since the print still has not been delivered to [it]." Panda's attorneys (Abraham & Koenig)[10] in turn had responded on January 9, 1963, *that Specialty Records* had waived the delivery date of November 20, 1962, and "time being of the essence of the contract." Thus, the fact that this issue was at the core of the differences between

---

[9]Section 473 provides in part: "The court may, in furtherance of justice, and on such terms as may be proper . . .may likewise in its discretion, after notice to the adverse party, allow, upon such terms as may be just, an amendment to any pleading . . . in other particulars. . . . [¶] When it appears to the satisfaction of the court that such amendment renders it necessary, the court may postpone the trial, and may, when such postponement will by the amendment be rendered necessary, require, as a condition to the amendment, the payment to the adverse party of such costs as may be just."

Section 576 provides: "Any judge, at any time before or after commencement of trial, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading or pretrial conference order."

[10]Not Panda's trial counsel.

Panda and Specialty was known to Panda long before the complaint was filed on October 14, 1963. The answer filed by Specialty and Rupe on November 18, 1963, gave further notice that violation of the provisions of paragraph III (d) would be the gravamen of the defense. There was no explanation why plaintiff's counsel had not availed himself of this long period in which to amend his pleadings. Similarly, there was inexcusable neglect in counsel's failure to ascertain prior to trial whether or not the case had been pretried.

Furthermore, as the court and defense counsel noted, plaintiff's motion to amend was being made just one day short of a full five years' lapse from the date the complaint was filed. The parties and the court were confronted with a delicate situation in that if the court had permitted an amendment which required a continuance, the case would not have been brought to trial within the meaning of section 581c of the Code of Civil Procedure. ■ An issue of law as to pleadings raised on the date of trial before a court sitting without a jury may be construed as having brought the case to trial if the ruling constitutes a final determination of a case, but otherwise where the action of court does not constitute a final disposition. (*Bella Vista Dev. Co.* v. *Superior Court* (1963) 223 Cal.App.2d 603, 608 [36 Cal.Rptr. 106].) ■ Allowance of an amendment to pleadings would not have constituted a final disposition of the case. Since time consumed in effecting an amendment of pleadings is not excluded from the five-year period (*J. C. Penney Co.* v. *Superior Court* (1959) 52 Cal.2d 666, 670 [343 P.2d 919]), plaintiff would have gained nothing by a grant of permission to amend pleadings if it had resulted in defendants thereby being unable to proceed to trial on October 14, 1968. Five years would have elapsed and the case would have been subject to mandatory dismissal. (Code Civ. Proc., § 581c.) ■ It is incumbent upon appellant to show prejudice on this appeal and in regard to the possible five-year mandatory dismissal that a continuance would not have been granted the defendants.

■ There is also this further facet to the claimed waiver of the November 20, 1962, delivery date which must be considered. Even if we assume that the late return of Specialty's signed copy of the agreement constituted a waiver of the November 20, 1962, delivery date of the positive print, the waiver was conditioned upon Panda *cabling* Panda's agent in New York *immediately* to rush the print to Specialty. Despite this request that Panda direct its New York agent *by cable,* the opening statement disclosed that Panda communicated with Sefo *by mail.* Furthermore, the delay of almost two months in delivery was caused by Sefo claiming that Panda owed it $300 and Sefo having posted only a temporary import bond, instead of a permanent one, on the print.

Under the foregoing circumstances, plaintiff did not make a prima facie

showing that an amendment to his complaint would have promoted the interests of justice or placed plaintiff in any better position than he found himself upon the close of his counsel's opening statement.

### III.

■ The motion for dismissal (nonsuit) was properly granted upon the pleadings on which the case went to trial. ■ As we earlier noted, a motion for a nonsuit upon the opening statement of counsel is not foreclosed by the 1961 amendment to section 581c of the Code of Civil Procedure even in a trial to a court sitting without a jury. (*Gonsalves* v. *City of Dairy Valley* (1968) *supra,* 265 Cal.App.2d 400, 402-404.) Proof of any waiver or excuse for nonperformance would have constituted a material variance, as we also have already observed. ■ "Performance of conditions precedent may be alleged generally . . . , but excuses must be pleaded *specifically.*" (Italics in original.) (2 Witkin, Cal. Procedure (1954) Pleading, § 259, p. 1234.) "Some authorities allow a plaintiff to allege full performance and prove a waiver by defendant of the right to such performance. . . . But the general rule, followed in California, treats the excuses of waiver and prevention in the same way, and requires specific pleading of the facts of waiver." (2 Witkin, *op. cit. supra,* at p. 1235.) ■ If plaintiff intended to raise an estoppel against defendants asserting a breach of contract, disclosed in the opening statement, it was incumbent upon him to plead the facts upon which such an estoppel would have been predicated. (Cf. *Cohen* v. *Metropolitan Life Ins. Co.* (1939) 32 Cal.App. 2d 337, 347 [89 P.2d 732]; *Fleishbein* v. *Western Auto Supply Agency* (1937) 19 Cal.App.2d 424, 427-428 [65 P.2d 928].)

■ It is undisputed that Panda signed a copy of the contract on November 8, 1962, and that Specialty paid the $10,000 on that date. A valid contract came *in esse* on that date without Specialty's signature. Absent a specific condition that the contract would not come into force until both parties had signed the agreement, a part payment of the purchase price took the case out of the operation of the statute of frauds then applicable. (Civ. Code, §§ 1624a, 1724;[11] *Hildebrand* v. *Delta Lbr. etc. Co.* (1944)

---

[11]Identical provisions in the two sections read in part here material: "(1) A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upward shall not be enforceable by action unless the buyer shall . . . give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf. [¶] (2) The provisions of this section apply to every such contract or sale, notwithstanding that the goods may be intended to be delivered at some future time or may not at the time of such contract or sale be actually made, procured, or provided, or fit or ready for delivery, or some act may be requisite for the making or completing thereof, or rendering the same fit for delivery. . . ."

67 Cal.App.2d 88, 91 [153 P.2d 377]; cf. *Warfield* v. *Basso* (1923) 62 Cal.App. 47, 50-51 [216 P. 48].) ▮ The making of the contract attached as Exhibit "A" to plaintiff's allegations in paragraph VIII of his complaint was admitted by the answer thereto. Plaintiff's opening statement conceded that no shipment or delivery of the positive print on November 20, 1962, had been made. Consequently, the grant of a dismissal (nonsuit) was proper; it was not a grant of a judgment upon the pleadings.

## IV.

Appellants' contention that the court erred in failing to make a finding on a material issue as to whether Sefo Corporation was an independent contractor for whose actions or omissions Panda was not responsible under paragraph TENTH of the agreement is not well taken, whether it be in reference to the complaint or the cross-complaint. ▮ "No findings of fact are necessary, nor have they any place, in an action where a judgment of nonsuit is rendered." (*Estate of Baird* (1926) 198 Cal. 490, 506 [246 P. 324]; accord: *Jewell* v. *Pierce* (1898) *supra*, fn. 1, 120 Cal. 79, 85; *Aufdemkamp* v. *Pierce* (1935) 4 Cal.App.2d 276, 281 [40 P.2d 599]; *New York Life Ins. Co.* v. *Daley* (1914) 25 Cal.App. 376, 379 [143 P. 1033].) ▮ It is also well settled that no findings are necessary on issues not presented by the pleadings. (*Rossi* v. *Hackett* (1961) 190 Cal.App.2d 400, 406-407 [12 Cal.Rptr. 12]; *Bandy* v. *Westover* (1927) 200 Cal. 222, 230 [252 P. 593]; *Yost* v. *Hillcrest Motor Co.* (1963) 215 Cal.App.2d 108, 111 [29 Cal.Rptr. 906]; *G & P Electric Co.* v. *Dumont Constr. Co.* (1961) 194 Cal.App.2d 868, 883 [15 Cal.Rptr. 757].) Sefo Corporation's status was not an issue raised by the pleadings upon which the case went to trial on the cross-complaint. Hence, there was no occasion for the trial court to make a finding on this issue.

## V.

▮ Finally, the appellants contend that the findings of the court that the contract between Panda and Specialty was entered into on November 8, 1962, and required delivery and shipment of a positive print by November 20, 1962, are unsupported by the evidence. The contention lacks merit. The allegations of paragraph IV of the cross-complaint that the contract attached to plaintiff's complaint was entered into on or about November 8, 1962, were admitted. Panda's answer thereto denied only the portion alleging that the contract had been entered into and was to be performed in California. ▮ It is well settled that where facts alleged in a pleading are not controverted by the pleading in response, they are not in issue and no evidence need be offered to prove their existence. In fact it is error to receive evidence on matter which is thus excluded as an issue. (*Fuentes* v. *Tucker* (1947) 31 Cal.2d 1, 4-5 [187 P.2d 752]; *Sande* v. *Sande* (1969)

276 Cal.App.2d 324, 327-328 [80 Cal.Rptr. 826]; *Butler* v. *Stratton* (1949) 95 Cal.App.2d 23, 29 [212 P.2d 43].) ▮▮▮ The contract as attached to the complaint in the file was before the court. The fact that a dismissal (nonsuit) was granted on the complaint did not physically remove the contract from the file and it was still a part of the cross-complaint which had pleaded it by reference. Rupe testified on the trial on the cross-complaint that he had rescinded the contract on December 10, 1962, and that he never received a copy of the positive print until around the 10th or 12th of the following January. The notice of rescission dated December 10, 1962 (Exhibit "A" in evidence), stated that termination of the agreement was "due to the fact that we still have not at this late date received the positive print referred to in Section (d) of Article THIRD of that agreement [dated November 8, 1962]." Exhibit "B" introduced by the cross-complainant was a telegram dated January 4, 1963, sent from New York. It read: "DESPITE EVERY EFFORT FILM SECRET OF DR. HITCHCOCK STILL AWAITING NEW YORK CUSTOMS CLEARING. HAVE EXPEDITED AND EXPECT FILM DELIVERED AS ARRANGED TO YOU WITHIN ONE WEEK. [signed] PANDA FILMS BY RALPH SERPE." From the foregoing evidence, it was inferable that whether the contract called for "shipment" or "delivery" on November 20, 1962, Panda had performed neither act. The findings complained of were thus amply supported by the record.

### VI.

The judgment is affirmed as to all parties.

Kaus, P. J., and Reppy, J., concurred.