Filed 6/16/15  City of Roseville v. Zisk CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

| | |
|---|---|
| CITY OF ROSEVILLE, | C073496 |
| Plaintiff and Respondent, | (Super. Ct. No. S-CV-0032376) |
| v. | |
| JOHN WILLIAM ZISK, | |
| Defendant and Appellant. | |

Defendant John William Zisk appeals from an order granting a workplace violence restraining order to the City of Roseville (City) on behalf of its city manager, Ray Kerridge.  (Code Civ. Proc., § 527.8.)[1]  Zisk contends that there is insufficient evidence that he made a credible threat of violence, and the injunction impermissibly burdens his rights to petition government for redress of grievances and travel under the federal and state Constitutions.  We shall affirm the order.

---

[1] Further undesignated statutory references are to the Code of Civil Procedure.

1

For the past four decades, Zisk and his parents (now deceased) have been in a dispute with the City over certain real property.

On January 3, 2013, Zisk sent a two-page, single-spaced e-mail to Kerridge expressing his extreme frustration over the City's failure to respond to a list of complaints Zisk had provided to Kerridge and a purported offer by Kerridge to mediate that was subsequently revoked. After listing dozens of issues and actions by the City, many of which Zisk claimed were "beyond criminal," Zisk stated: *This is very ugly and will lead to more national attention than recent school shootings. Please do not force me down this messy path that may consume more lives.* " (Italics added.)

On January 16, 2013, the City initiated the instant action to obtain a temporary restraining order and injunction on behalf of Kerridge, alleging that Zisk made a credible threat of violence against Kerridge that would place a reasonable person in fear for his safety. The City submitted Kerridge's declaration in support of its petition. In his declaration, Kerridge explained that Zisk "has been involved in a longstanding battle against the City that began with his father – now deceased – regarding the City's acquisition of certain real property interests at or near 205 Thomas Street in Roseville, California . . . ." Zisk told Kerridge that he believes that the City is responsible for the deaths of his parents. Kerridge understood Zisk's reference to " 'recent school shootings' " in the January 3, 2013, e-mail to "refer to the mass shooting at the Sandy Hook Elementary School in Newton, Connecticut on December 14, 2012" and "considered his language to be very threatening."

Kerridge read e-mails Zisk sent to other City officials that contained what he considered to be "threatening language." He reviewed an e-mail Zisk sent to Assistant Planning Director Kevin Payne in May 2009, in which Zisk stated: "if they [(City officials)] are patronizing me, they are messing with the wrong person," and "[i]f my life must end, it will not end like my parents. My children will not have this legacy. My

2

methods will be different. . . . [¶] . . . [¶] . . . Please do not force me to do what we both will lose at." Kerridge also reviewed an e-mail Zisk sent to then councilwoman Susan Rohan in August 2011, in which he stated: "Silence and stonewalling will not work anymore. Cannot take much more. Please help me understand before a war occurs."

Kerridge also was aware of an encounter between Assistant City Manager John Sprague and Zisk at Costco in April 2010, which Sprague summarized in an e-mail to Zisk. Among other things, Zisk told Sprague about an attorney who did not represent Zisk's father in a professional manner and stated that if he had been treated in this manner, he would have probably shot the attorney. While Sprague did not feel threatened by Zisk, he said that Zisk "is very angry toward the City and very focused on trying to right what he believes are wrongs committed against his father, mother and family by the City of Roseville."

On January 17, 2013, the trial court issued a temporary restraining order which, among other things, prohibited Zisk from contacting Kerridge "directly or indirectly, by any means" and required Zisk stay at least 150 yards away from Kerridge and Kerridge's workplace (Roseville City Hall).

On January 30, 2013, Zisk filed his response to the petition, in which he denied doing the things described therein. Zisk submitted a declaration in support of his response. In his declaration, Zisk claimed that Kerridge and City officials had "used statements in my e-mails to manufacture 'credible evidence of a threat of violence' " and "simply want to avoid their duties as public officials to listen to and attempt to address the concerns and inquiries of a citizen of the community of Roseville." He indicated that he is not a violent person and had no intention of carrying out any alleged threats. He summarized the long standing issues between himself and his family on the one hand, and the City on the other, and stated that he was on friendly terms with the recipients of the various e-mails referenced in Kerridge's declaration. He denied ever stating that he would shoot someone, explaining that he was referring to his father and not himself when

3

speaking to Sprague at Costco. He said that his reference to " 'national attention' . . . was taken completely out of context" and that his reference to " 'school shootings' was in connection with my assertion that my plight would lead to national attention, not to any threatened violence by me."

Prior to the hearing on the petition, the City submitted the declaration of Michael Doane, a lieutenant with the Roseville Police Department, in support of its petition. One of Doane's primary responsibilities is overseeing the City's critical incident negotiations team, which "assess[es] threats in all critical incidents involving people in distress and crisis situations." He reviewed various e-mails sent by Zisk "to determine whether the statements [contained therein] constitute a credible threat of violence to City employees." In addition to the e-mails referenced in Kerridge's declaration, Doane reviewed an e-mail sent by Zisk to City Bikeway Planner Mike Dour, in which Zisk explained that his father "submitted truthful information and gave his concerns [regarding a bike trail] for over 35 years until it took his life. . . . For a caring, credible, man like my father whom told nothing but truth, his respect, character, and admiration were taken advantage of. I have lived this since I was 9 years of age. My methods will be different." Doane also reviewed an e-mail Zisk sent to Placer County Flood Control and Water Conservation District employee Carrie Diller in October 2009, concerning a flood study, which stated in part: "People do wrong and say they are just doing their job even if it kills someone else. I hear it every day. This is wrong. People have a choice. Please be part of the truth so this does not kill me too. And then my children." Based on his training and experience, Doane opined that the statements contained in the e-mails he reviewed "constitute a credible threat of violence and there is valid reason for concern." He reasoned that Zisk's "stress points appear to have progressed and worsened as they relate to his anger towards the City," and that his belief that the City is responsible for the death of his parents "is leading him to make statements that are gradually becoming more threatening and violent."

4

On February 11, 2013, the trial court held a hearing on the City's petition. The City submitted the matter on the pleadings, including the declarations of Kerridge and Doane. Zisk testified on his own behalf. He explained that a portion of his family's property was "taken by a Condemnation Judgment many years ago." After taking the property, the City failed to use it for many years, which upset Zisk. The City eventually constructed a bike trail through the property, but according to Zisk, the trail also "crosses . . . [Zisk's] property which was not subject to the condemnation suit." While Zisk was upset, he denied making any threats of violence or intending to cause harm to anyone. More particularly, he denied that he intended to imply in his e-mails that he was going to use violence or cause harm to anyone. When asked what he meant when he said, "My methods will be different," he explained that "[t]he questions that [his father] presented to the City [were] . . . never . . . answered. And they have never followed any due process. I am asking those same questions and I'm not getting anywhere. So I planned on bringing it to the people, to the media, to higher authorities per se." As for his dealings with Kerridge, he stated that he has only met him twice, both times at Kerridge's request. They met eight or nine months before the hearing in Kerridge's office and again a month later at Zisk's property, where Zisk "showed him the issues." The meeting at the Zisk's property was "very . . . pleasant," and before Kerridge left, he told Zisk, "John, we're getting old. Get me that list." Thereafter, Zisk supplied Kerridge with a list of 40 to 50 items, but Kerridge never responded.

On cross-examination, Zisk said that he was aware that children had been shot and killed at an elementary school in December 2012. He heard about it on the news, although he did not know where it was. He also heard of similar shootings in New York, Virginia, and Los Angeles. He acknowledged sending the January 3, 2013, e-mail to Kerridge, which stated: "This is very ugly and will lead to more national attention than recent school shootings. Please do not force me down this messy path that may consume more lives."

5

On redirect, Zisk explained, "When I said [t]his is ugly, the word *this* refers to the paragraph prior. There are hundreds of issues within that, and I am trying to simplify it with [Kerridge], which is what I had a meeting with Mayor Roccucci about . . . just prior to meeting with [Kerridge]. [¶] The [c]onsume more lives, as I said, with my father and mother, we've lived this for so many years, and I saw it consume their lives. And I was talking about my life. [¶] And the e-mail that I sent to [Kerridge] actually states that as Item No. One, [c]onsume my life. And [Kerridge] knew that. And I stated that to him on the property, so he understood that very well." When Zisk referred to the "recent school shootings," he did not mean that he was going to do anything like that, explaining, "I was stating that I was going to reach national attention. I did not want to tell them the direction I was going. But I've seen my mother and father and the City battle in the courts. If it needs to go there and if I could afford a million dollars to hire a law firm to do so, I might try that again. [¶] But I care about my kids. And I made a decision to help them through school and not take this to the Court. So I'm pushing for an investigation."

The trial court took the matter under submission until later that morning, at which time it read its decision into the record. The court acknowledged that "[t]he right of people to petition for redress of grievances is a central and vital part of our representative democracy" but found that "statements such as those that [Zisk] has made do not have a legitimate purpose. They have no purpose except to frighten the hearers." With respect to Zisk's testimony that he did not intend to threaten Kerridge or anyone else, the court observed that "[a] willful intent to frighten is not one of the elements of the Statute." The court "determine[d] that the conduct that is attributed to . . . Zisk in the Petition does in fact constitute by clear and convincing evidence [an] actionable threat of workplace violence under Code of Civil Procedure Section 527.8." Accordingly, the court issued an order granting an injunction against Zisk on behalf of Kerridge. In relevant part, the order prohibits Zisk from doing the following things to Kerridge: (1) harass, molest,

6

assault, or disturb the peace of the person; (2) commit acts of violence or make threats of violence against the person; (3) follow or stalk the person during work hours or while going to or from the place of work; (4) contact the person, directly or indirectly, by any means; (5) enter the person's workplace; and (6) take any action to obtain the person's addresses or locations.  It also requires Zisk stay at least 150 yards away from Kerridge and Kerridge's workplace, namely Roseville City Hall, located at 311 Vernon Street, Roseville.  "Peaceful written contact through a lawyer or a process server or other person for service of legal papers related to a court case is allowed and does not violate the[e] order."  The restrictions placed on Zisk expire three years after the date of issuance.[2]

DISCUSSION

Section 527.8 "authorize[s] any employer to pursue . . . an injunction on behalf of its employees to prevent threats or acts of violence by either another employee or third person."  (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 333 (*Scripps*).)  It provides in relevant part:  "Any employer, whose employee has suffered unlawful violence or a credible threat of violence from any individual, that can reasonably be construed to be carried out or to have been carried out at the workplace, may seek a temporary restraining order and an injunction on behalf of the employee . . . ."  (§ 527.8, subd. (a).)  If there is good cause to grant the petition, the court must hold a hearing and "receive any testimony that is relevant and may make an independent inquiry."  (§ 527.8, subd. (j); see § 527.8, subd. (h).)  "If the judge finds by clear and convincing evidence that the [defendant] engaged in unlawful violence or made a credible threat of violence, an injunction shall issue prohibiting further unlawful violence or threats of violence."  (§ 527.8, subd. (j).)  A section 527.8 protective order must be limited to a three-year

---

[2]  The City incorrectly states that "[t]he injunction issued applies to Kerridge and other City employees."  The sole "employee (protected person)" identified in the order is Kerridge.  No "additional protected persons" are listed.

period and cannot be issued if it "prohibit[s] speech or other activities that are constitutionally protected . . . ."  (§ 527.8, subds. (c), (k)(1).)

On appeal, the appropriate test is whether the findings (express and implied) that support the trial court's entry of the restraining order are justified by substantial evidence. (*R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 188.)  However, whether the facts, as found by the trial court, are legally sufficient to constitute a "credible threat of violence" under section 527.8, and whether the restraining order passes constitutional muster, are subject to independent review.  (*In re George T.* (2004) 33 Cal.4th 620, 634; *DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 890.)

I

Zisk's Statements Which Referenced "Recent School Shootings" and the Possible "Consum[ption] [of] More Lives" Constituted a Credible Threat of Violence Under Section 527.8

Zisk claims that "no reasonable person" would believe his references to "recent school shootings" and the "consum[ption] [of] more lives" were anything but "obvious hyperbole," and that such protected comments could not be used as evidence to support the issuance of a restraining order.  We disagree.

As previously noted, a " '[c]redible threat of violence' is a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety . . . and that serves no legitimate purpose."  (§ 527.8, subd. (b)(2).)  "[I]n determining whether a threat occurred, the entire factual context, including the surrounding events and the reaction of the listeners, must be considered."  (*People v. Falck* (1997) 52 Cal.App.4th 287, 298.)  The defendant's subjective intent is "not required for his conduct to be deemed a credible threat.  . . . [There is no] requirement that the defendant intend to cause the person to believe that he or she had been threatened with death or serious injury.  It . . . requires only a statement made knowingly and willfully, which would place a reasonable person in fear for his or her safety.

8

[Citations.]" (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 538-539 (*Garbett*).)

Applying these legal principles, we conclude that Zisk's statements amounted to a credible threat of violence. Zisk told Kerridge: "This is very ugly and will lead to more national attention than the recent school shootings. Please do not force me down this messy path that may consume more lives." These statements were made three weeks after the shootings at Sandy Hook Elementary School, which garnered national attention. Zisk claimed that his reference to " 'school shootings' was in connection with [his] assertion that [his] plight would lead to national attention, not to any threatened violence by [him]," but his claim begs the question, how did he intend to obtain national attention other than by committing an act of violence akin to the recent school shootings? Moreover, Zisk's subjective intent is irrelevant. (See *Garbett, supra,* 190 Cal.App.4th at pp. 338-339.) The salient question is whether Zisk's statements were sufficient to "place a reasonable person in fear for his or her safety . . . and . . . serve[] no legitimate purpose." (§ 527.8, subd. (b)(2).) The answer is yes. As we noted in *Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1413, "[I]n our post-Columbine High School world, fantastical threats that once were taken lightly as fancies of immature youth now cause reasonable persons to pause and even to become fearful." Considering the timing of the statements and the entire factual context, including Zisk's decades-long dispute with the City and growing frustration as evidenced in his communications with other City officials, we have no trouble concluding that Zisk's statements constituted a credible threat of violence within the meaning of section 527.8.[3]

---

[3] Zisk complains that "[t]he City included only selected portions of the series of emails between [himself] and the City Manager's offices." We note that copies of all e-mails relied on by the City were part of the record below, and the trial court indicated that it had "read and considered the materials provided by the City," including the e-mails. We, too, have reviewed the e-mails in their entirety.

9

Relying on the United States Supreme Court's decision in *Watts v. United States* (1969) 394 U.S. 705 [22 L.Ed.2d 664] (*Watts*), Zisk argues that "no reasonable person can be expected to believe that [his] comment in the e-mail [to Kerridge] could be anything but hyperbole." In *Watts*, the defendant was at public rally on the Washington Monument grounds, during the time of the Vietnam War, when he stated that he had just received his draft notice to report for induction, declared he would not go, and said that " 'If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.' " His listeners laughed. (*Id.* at pp. 706-707.) Reversing the defendant's conviction for threatening the life of the President, the United States Supreme Court said that the defendant's speech, considered in context, was "political hyperbole" rather than a "true 'threat' " and was therefore constitutionally protected. (*Id.* at p. 708.)

The circumstances here differ from those in *Watts*. Unlike *Watts*, which involved a threat against the President of the United States made during a public political rally opposing the Vietnam War, Zisk's statements were directed to a City official in a private communication with the intent to obtain of settlement of ongoing issues between himself and the City. For the reasons previously discussed, a reasonable person could understand Zisk's statements as a credible threat and not mere political hyperbole.

II

The Injunction Does Not Impermissibly Infringe Upon Zisk's Constitutional Rights

Zisk contends his rights to petition the government for redress of grievances and to travel are impermissibly abrogated by the trial court's order. Again, we disagree.

As the trial court acknowledged, the right to petition for redress of grievances is a " 'fundamental' " first amendment right. (*Smith v. Silvey* (1983) 149 Cal.App.3d 400, 406). "A content-neutral regulation will be sustained under the First Amendment if it advances important governmental interests unrelated to the suppression of free speech and does not burden substantially more speech than necessary to further those interests. [Citation.]" (*Turner Broadcasting System, Inc. v. FCC* (1997) 520 U.S. 180, 189 [137

10

L.Ed.2d 369].)  Here, the government has an important interest in preventing workplace violence.  (*Scripps, supra,* 72 Cal.App.4th at p. 334.)  Nor does the injunction burden substantially more speech than necessary.  The injunction bars Zisk from communicating with one individual -- Kerridge.  It does not prevent him from communicating with the City, nor does it bar him from filing complaints or exercising any other petitioning activity.  While the injunction also prohibits him from entering City Hall, there is no evidence that this restriction will have any impact upon his petitioning activity.  To the contrary, in his declaration, he acknowledged that his meeting with Kerridge was the only time he had been to City Hall in the past two years.  On this record, we have no trouble concluding that the injunction does not impermissibly impinge upon Zisk's right to petition.

Zisk also contends that "the order . . . prohibiting [him] from traveling through the City of Roseville to reach the United States Post Office located across from 311 Vernon Street (Roseville City Hall), violates his right to travel . . . ."  "Although no provision of the federal Constitution expressly recognizes a right to travel among and between the states, that right is recognized as a fundamental aspect of the federal union of states.  'For all the great purposes for which the Federal government was formed, we are one people, with one common country.  We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States.'  [Citation.]"  (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1096-1097.)  Assuming for argument's sake that the right to travel is implicated by the injunction's stay away provision, we note that "[l]ike all constitutional rights the right of free movement is not absolute and may be reasonably restricted in the public interest.  Conditions which infringe on constitutional rights are not automatically invalid.  Certain intrusions by government which would be invalid under traditional constitutional concepts may be reasonable at least to the extent that such intrusions are required by legitimate governmental demands."  (*In re White* (1979) 97

11

Cal.App.3d 141, 149-150.)  Here, Zisk may travel anywhere he chooses, except he must stay 150 yards away from Kerridge and Kerridge's workplace, City Hall.  These restrictions are reasonably related to the legislative goal of providing a safe workplace, and a zone of safety around Kerridge, as the Legislature intended when enacting section 527.8.  (*Scripps, supra,* 72 Cal.App.4th at pp. 334.)

Zisk asserts for the first time in his reply brief that the injunction is "unreasonable" to the extent it prohibits him from visiting the United States Post Office, which is within 150 yards of City Hall, because "the facts of this case do not concern the United States." Assuming for argument's sake that this issue is properly before us, Zisk fails to explain how his inability to access this particular post office infringes upon his rights in any way. Absent any such explanation, we are unable to determine whether the restriction is unreasonable as Zisk contends.  That the facts of this case do not concern the United States is of no consequence.  The point is to keep a zone of safety around Kerridge; that a post office falls within that zone alone does not make the restriction unreasonable. Should other reasons exist or should Zisk wish to propose a less restrictive alternative, he is free to bring a motion to modify the injunction.  (§ 527.8, subd. (k).)

### DISPOSITION

The order is affirmed.  The City shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


     BLEASE     , Acting P. J.


We concur:


     NICHOLSON     , J.


     HOCH     , J.