Filed 12/30/13  Conservatorship Gregory D. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Conservatorship of the Person of GREGORY D.<br>_____<br><br>LINDA D.,<br><br>      Petitioner and Appellant,<br><br>      v.<br><br>BRUCE HITCHMAN et al.,<br><br>      Objectors and Respondents. | B245533<br><br>(Los Angeles County<br>Super. Ct. No. SP006273) |

APPEAL from an order of the Superior Court of Los Angeles County, Joseph S. Biderman, Judge.  Affirmed.

Daniel D. Rodarte for Petitioner and Appellant.

Joseph D., Respondent, in pro. per.

Law Offices of Cynthia R. Pollock, Cynthia R. Pollock and Douglas S. Fabian for Objectors and Respondents.

Linda D. (Linda), the mother of limited conservatee Gregory D. (Gregory), who is under the conservatorship of Bruce Hitchman and Lee Ann Hitchman (the Hitchmans), appeals an order directing her to pay one-half of the Hitchmans' conservators' fees as well as one-half of their attorney fees (the other half to be borne by her ex-husband, Joseph D. (Joseph), Gregory's father.[1]

The essential issue presented is whether the trial court erred in directing the parent of a conservatee to pay attorney fees and conservator fees arising out of the conservatorship.

In an earlier order, which Linda did not appeal, the trial court ordered her to pay $500 per month to the Hitchmans and $500 to their attorney, subject to being adjusted by way of accounting petitions at six month intervals. Linda is bound by the earlier order. Therefore, we reject her contention the trial court exceeded its authority in directing her to pay a portion of the fees charged by the conservators and their attorney. The order appealed from is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Gregory is a developmentally disabled adult, currently in his mid-twenties. He was diagnosed with autism as a child. His parents, Joseph and Linda, who are both physicians, obtained a divorce. Gregory resided with each of his parents, at their respective homes, on alternating weeks. In 2005, Gregory reached the age of majority. In 2008, he moved into his own apartment, with supportive services which enable him to live independently.

1. *Earlier proceedings.*

In 2004, Linda and Joseph filed competing petitions to be named as the limited conservator of their son Gregory. In 2005, they entered into a settlement agreement setting the terms for Gregory's limited conservatorship. Pursuant to said settlement

---

[1]     Joseph has not appealed. He has filed a respondent's brief, urging affirmance of the trial court's order requiring the parents to pay the fees charged by the conservators and their counsel.

agreement, Joseph withdrew his petition for conservatorship and stipulated to Linda's appointment as Gregory's conservator.

On July 25, 2005, the trial court appointed Linda as Gregory's limited conservator.

While Linda was serving as limited conservator, further litigation arose between Joseph and Linda pertaining to the administration of the conservatorship. Joseph sought Linda's removal, contending she had improperly relocated Gregory from half-time residence in Joseph's home and had prohibited contact between Gregory and Joseph's family.

In August 2008, the trial court appointed Paul Gaulke as the Probate Volunteer Panel (PVP) attorney for Gregory. Thereafter, the trial court appointed Thomas Beltran as an expert to advise the court on the appropriateness of Gregory's programming and his reasonable needs.

On July 2, 2009, after Joseph and Linda entered into another settlement agreement, the trial court entered an order providing, inter alia, that Linda would resign as limited conservator immediately upon appointment of a successor limited conservator for Gregory. On September 11, 2009, the trial court appointed Linda Cotterman (Cotterman) as the successor limited conservator for Gregory.

In April 2011, Joseph filed a petition for termination of Cotterman as limited conservator. Following trial of the matter on September 20, 2011, the trial court granted the petition to remove Cotterman, finding that she had violated various court orders.

On November 18, 2011, the trial court appointed the Hitchmans as the new co-conservators. On that date, the trial court also ruled on a petition for instructions by Gaulke, Gregory's court appointed attorney, who sought guidance from the court as to how the Hitchmans could best administer Gregory's conservatorship so as to minimize further disputes between the parties. The trial court also made certain rulings with respect to Gregory's visitation schedule, disclosure of Gregory's medical and financial

3

records, and replacement of Gregory's supported living services vendor, My Life Foundation, with a new vendor.

In addition, the November 18, 2011 order directed both Linda and Joseph to pay $500 per month to Attorney Cynthia R. Pollock (Pollock) and $500 per month to the Hitchmans, with any payments "in excess or in deficiency . . . [to] be dealt with at the time the accounting petition is heard by the court, " at six month intervals.

Linda appealed the November 18, 2011 order on the petition for instructions. However, her contentions related exclusively to Gregory's interests.[2] She did not challenge the trial court's order insofar as it required her to pay $500 per month to Pollock and $500 per month to the Hitchmans, with overpayments or underpayments to be dealt with by way of an accounting petition, at six month intervals.

This court dismissed Linda's appeal from the November 18, 2011 order on the ground she had not identified any of her own rights or interests which were injuriously affected by said order; her assignments of error pertained solely to alleged deprivations of Gregory's rights. This court concluded "Linda lacks standing to assert error that injuriously affects only Gregory, a nonappealing party. [Citation.]" (*Conservatorship of Gregory D., supra,* 214 Cal.App.4th at p. 68.)

2. *The instant proceedings.*

a. *Petition for approval of conservators' fees and their attorney fees.*

On May 11, 2012, the current co-conservators, namely, the Hitchmans, represented by Pollock, filed a petition for approval of co-conservators' fees in the amount of $22,586 as well as attorney fees for Pollock in the amount of $21,014, one-half payable by each of Gregory's parents. Attached to the petition were (1) a 39-page

---

[2] On her appeal from the November 18, 2011 order, Linda contended: the visitation order violated *Gregory's* constitutional rights to liberty and privacy; the order directing terminating of My Life Foundation as Gregory's supported living services care provider was in excess of the trial court's jurisdiction; and the order mandating disclosure of Gregory's medical, financial and personal records to his parents violated *Gregory's* constitutional and statutory rights of privacy. (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67.)

4

billing statement from the Hitchmans, spanning October 16, 2011 through May 9, 2012, containing hundreds of entries for services rendered by the Hitchmans, and (2) an 11-page invoice from Pollock, covering the period of September 27, 2011 through May 3, 2012.

The moving papers indicated "the costs and fees incurred were regrettable, but . . . unavoidable," due to "the litigation tension between the parties. . . . [T]hese parties are *determined* to fight. Therefore, they should be financially responsible for the outcome, on an equal share basis, pursuant to past stipulation, and because they have both already been paying toward such fees and costs, should they wish to allege they should not be responsible for such fees, should be collaterally estopped from such assertion." Further, "Co-conservators and their attorney do not desire to spend so much time on this one matter. They do not believe it is in [Gregory's] interest, but are forced into this position by the parents and their constant and relentless litigation with one another. Therefore, it is fair and equitable they should be ordered to pay these fees." Further, both parents were highly compensated physicians and each had the ability to pay their share of the fees and costs.

b. *Linda's opposition.*

Linda argued the Probate Code does not authorize the trial court to order her to pay fees incurred by the conservator or their attorney, other than those fees she expressly consented to pay, i.e., $500 per month to the Hitchmans and $500 per month to Pollock. Linda contended that compensation for the conservators and for their attorney could only be charged against the conservatorship estate. (Prob. Code, §§ 2641, 2642, subd. (b).)[3]

---

[3]     With respect to a conservator's compensation for services rendered, Probate Code section 2641 states in pertinent part at subdivision (b): "The compensation allowed shall thereupon be charged against the estate." Similarly, Probate Code section 2642 provides, with respect to compensation for an attorney for services rendered to the conservator, "The compensation so allowed shall thereupon be charged against the estate." (*Ibid.,* subd. (b).)

c. *The Hitchmans' response.*

The Hitchmans argued Probate Code sections 2641 and 2642 do not prescribe the exclusive source from which fees may be paid. Here, Gregory, the conservatee, is certainly incapacitated from earning a living, and therefore Family Code section 3910 imposes an independent obligation on Gregory's parents to pay the fees of the conservators and the conservators' attorney.[4]

The Hitchmans also relied on the trial court's earlier order, dated November 18, 2011, which required each parent to make monthly payments toward the fees of the conservators and the conservators' attorney, with the payments to be adjusted at the time of an accounting, to occur at six-month intervals. By failing to appeal from that aspect of the November 18, 2011 order, Linda waived any substantive or procedural irregularity that may have existed with respect to said order, and the order was now binding on her.

d. *Trial court's order granting Hitchmans' petition.*

On September 28, 2012, following a hearing, the trial court granted the Hitchmans' petition and ordered Joseph and Linda to pay, in equal shares, the amount of $21,014 to Pollock and the amount of $22,586 to the Hitchmans.

In its written ruling, the trial court noted that Joseph and Linda previously had been ordered to pay the fees and costs of the co-conservators and their attorney. The trial court quoted the following colloquy from the November 7, 2011 transcript:

"[Joseph]: On the issue of the finances, the current order provides that the conservators' legal fees have been paid by the County of Los Angeles –

---

[4] Family Code section 3910 states in pertinent part at subdivision (a): "The father and mother have an equal responsibility to maintain, to the extent of their ability, a child of whatever age who is incapacitated from earning a living and without sufficient means." The purpose of the statute, requiring parents to support an adult child who unable to support himself, is to protect the public from the burden of supporting the person who has a parent able to support him. (*Woolams v. Woolams* (1952) 115 Cal.App.2d 1, 6; *In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1154.)

"The Court:  *That is going to stop. You and [Linda] are going to pay*.

"[¶] . . . [¶]

"The Court:  [S]o six months you'll have an accounting of these fees.

"Mr. Gaulke.  For the fees.

"The Court:  *If you're way ahead, refund some money.  If you're far behind, pay in some money.*

"Ms. Pollock:  Not a problem.

"The Court:  "Put that in the proposed order.

The September 28, 2012 order further stated:  "The Court's Order of November 18, 2011, reflects on Attachment 29 that [Linda and Joseph] shall each pay $500.00 per month for Conservatorship fees and $500.00 per month for legal fees.  [¶] Additionally, at Para. 3 of Attachment 29, the Court ordered:  [¶]  *The Successor Co-Conservators of the Limited Conservatorship of the Person of Gregory . . . shall petition the Court every six (6) months . . . for an accounting . . . regarding Successor Co-Conservator fees and attorney fees billed on behalf of the Successor Co-Conservators  attorneys, the Law Offices of Cynthia R. Pollock.  Any payments made to the Successor Co-Conservators . . . and their attorneys in excess or in deficiency shall be dealt with at the time the accounting petition is heard by the Court.*"
(Italics added.)

Thus, in the instant order, the trial court "conclude[d] that [Linda and Joseph] were [previously] ordered to make payments of conservators' fees at the rate of $500/month and attorney's fees at the rate of $500/month apiece *and to be subject to continuing orders for refunds or payments of all of these fees at six month intervals. This order has not been appealed* and is, therefore, subject to further orders as herein requested."  (Italics added.)

7

As for the amount now being requested, the trial court stated it had "carefully reviewed the statements and invoices presented by the Co-Conservators and counsel. The Court has further examined its file reflecting case activity during the billing period. The Court is satisfied that the fees charged by the Co-Conservators and counsel are reasonable and necessary to respond to the myriad of issues raised by [Linda and Joseph]." (Italics added.)

In sum, in the September 28, 2012 order, the trial court found the November 18, 2011 order, which had not been appealed, was binding and controlling. Based thereon, and having found the amount requested to be reasonable, the trial court awarded the Hitchmans the full sum requested.

Linda timely appealed the September 28, 2012 order.

## CONTENTIONS

Linda contends the trial court exceeded its jurisdiction in ordering her to pay the conservators' fees as well as attorney fees incurred by the conservatorship estate.

## DISCUSSION

1. *Linda failed to appeal the November 18, 2011 order, insofar as it required her to pay half of the conservators' fees and conservators' attorney fees, subject to periodic accountings; therefore, said order is final and binding.*

At this juncture, the essential issue is the impact of the November 18, 2011 order on Linda's contention the trial court erred in ordering her to pay half of the fees and costs charged by the Hitchmans and Pollock. As the trial court noted in ruling on the instant matter, the November 18, 2011 order required each parent to pay $500 per month to the Hitchmans and $500 to Pollock. The November 18, 2011 order also provided: "[The Hitchmans] shall petition the Court every six (6) months . . . for an accounting . . . regarding Successor Co-Conservator fees and attorneys' fees billed on behalf of the Successor Co-Conservators attorneys," with any payments "in excess or in deficiency . . . [to] be dealt with at the time the accounting petition is heard by the Court."

In granting the instant petition by the Hitchmans for conservators' and attorneys' fees, the trial court found, "*This order* [i.e., the earlier November 18, 2011 order] *has not been appealed* and is, therefore, subject to further orders as herein requested." (Italics added.)

In an attempt to avoid the impact of the November 18, 2011 order, Linda argued the conservators' fees and the attorney fees payable by each parent are *limited* by said order to the sum of $500 per month, payable by each parent to the Hitchmans and Pollock.

Linda reads the November 18, 2011 order far too narrowly. To reiterate, in addition to mandating the $500 monthly payments, the November 18, 2011 order provided: "[The Hitchmans] shall petition the Court every six (6) months . . . for an accounting . . . regarding Successor Co-Conservator fees and attorneys' fees billed on behalf of the Successor Co-Conservators attorneys," with any payments "in excess or in deficiency . . . [to] be dealt with at the time the accounting petition is heard by the Court." Therefore, in addition to obligating each parent to pay $500 per month to the Hitchmans and to Pollock, the November 18, 2011 order made the parents subject to upwards or downwards adjustments by way of accounting petitions at six-month intervals.

Accordingly, Linda's contention the trial court exceeded its statutory authority in ordering her to pay anything in excess of $500 per month to the Hitchmans and Pollock is not properly before this court. Having failed to appeal the November 18, 2011 order, insofar as it obligated Linda and Joseph to pay the fees of Pollock and the Hitchmans *subject to periodic accountings*, both Linda and Joseph are bound thereby. Having acquiesced in the trial court's authority to require the parents to pay the fees charged by the conservators and their counsel, the issue has been waived.[5]

---

[5]   The November 18, 2011 order, which is final and binding, precludes the parents from contending the trial court exceeded its statutory authority in ordering them to pay the fees charged by the conservators and their attorney. However, the November 18,

2. *Remaining issues not reached.*

In view of the binding effect of the November 18, 2011 order, it is unnecessary to address the Hitchmans' alternative argument, i.e.., that the duty of support imposed by Family Code section 3910 justifies the trial court's order requiring Linda and Joseph to pay the fees of the conservators and their attorney.

## DISPOSITION

The September 28, 2012 order is affirmed.  Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

---

2011 order does not foreclose a challenge to the *amount* of the fees sought by the conservators or their counsel by way of periodic accountings.  At this juncture, Linda does not contend the fees awarded were excessive.  In her appellate briefs, she merely argues the fees were unauthorized.